651 A.2d 403

**DeWayne BOYER**

v.

**STATE of Maryland.**

**No. 456, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 3, 1995.

Geraldine Kenney Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before FISCHER and CATHELL, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

DeWayne Boyer, appellant herein, was convicted by a jury in the Circuit Court for Baltimore City of robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. He was sentenced to twenty years for the robbery, and to five years (without parole) for the handgun offense. The sentences were to be served consecutively.

Appellant alleges that the court erred with respect to the following issues:

1.  The trial judge erred in denying appellant's motion to suppress his custodial statement to the police taken in violation of the Maryland common law rule against inducement.

2.  The trial judge erred in allowing the State to reopen its case-in-chief after the jury had begun its deliberations.

3.  The trial judge erred in denying appellant's motion to excuse for cause an emotionally distraught juror.

We shall address the issues raised seriatim.

### Suppression

On December 1, 1993, appellant, who was incarcerated at the Baltimore City Detention Center on charges unrelated to the present case, was transported to Northwestern District Police Headquarters and interrogated by Officers Ronald Willis and David Mills. According to Officer Willis, appellant was advised of his constitutional rights from a standard police department form, and he initialed each right, thereby acknowledging that he received the advice. Officer Willis stated that he did not make any promises to appellant concerning any statement he might make to the police.

Officer Mills acknowledged that he mentioned to appellant that if he made a statement the police would present that information to the prosecutor. The testimony was as follows:

[DEFENSE COUNSEL]: Did you tell—did either you or Officer Willis tell him you would speak to the State's Attorney if he gave you a statement?

[OFFICER MILLS]: Yes, we always tell—we always advise that we will go to the State's Attorney and tell—after we are given a statement or received a statement and before we come to court, we talk with the State's Attorney just to let them know what we have done, touch base with them and see how they feel about an upcoming case.

Q.  Did you tell Mr. Boyer, "if you talk to me, I'll be able to talk to the State on your behalf to help you out"?

A. I would only answer to the point where he would have been cooperative and, you know, was willing to answer questions. I didn't say that we would be able to give him a lesser sentence to my knowledge.

Q. But did you tell him—

A. No.

Q. —That you would be able to help him with the State's Attorney?

A. I don't recall saying I would be able to help him.

Q. But did you at some level indicate that you were going to talk to the State's Attorney on his behalf?

A. Sure.

Appellant argued at the suppression hearing that the police conduct represented "inducement" in its clearest form. The trial judge denied the motion to suppress. He concluded that Officer Mills' words did not create a reasonable assumption by appellant that "it would go easier for him" if he made a statement.

At trial, the prosecutor called Janet Griffin, the victim of the robbery, who testified concerning her prior photographic identification of appellant and her in-court identification of him. Officer Willis testified about the explanation of rights form; he then read the confession to the jury. The State concluded its case without introducing into evidence as exhibits either the explanation of rights form, or the confession. Appellant called Officer Mills, who reaffirmed that he had told appellant that if he talked Mills would go to the State's Attorney on his behalf.[1] Appellant rested and the State expressly noted that it had no rebuttal.

In reviewing the denial of a motion to suppress a statement as involuntary, we make an independent appraisal of the application of the law to the facts, but we accept the

---

1. In reviewing the denial of a motion to suppress, we look solely to the evidence introduced at the suppression hearing notwithstanding that the trial testimony may vary from that produced at the pre-trial motion hearing. *Riddick v. State,* 319 Md. 180, 571 A.2d 1239 (1990).

trial court's determination of fact, unless we conclude that the fact-finding is clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Riddick, supra; Ringe v. State,* 94 Md.App. 614, 620, 618 A.2d 266 (1993).

Officer Mills' response to defense counsel's questions must be viewed in context. Mills did not say, "I told him I would go to the State's Attorney on his behalf." The only person who said anything about going to the State's Attorney "on his behalf" was appellant's counsel, who framed the question. The test of whether a conversation between the police and the accused amounts to an improper inducement by the police in obtaining the cooperation of the accused depends upon what was said, not upon whose behalf it was said.

Clearly, a confession is involuntary if it is induced by force, undue influence, improper promises, or threats. *Reynolds v. State,* 327 Md. 494, 610 A.2d 782 (1992), *cert. denied,* — U.S. ——, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993); *Hoey v. State,* 311 Md. 473, 483, 536 A.2d 622 (1988). Whether a confession is voluntary under state non-constitutional law depends upon a "totality of the circumstances" analysis. *Hoey, supra.* A common thread present in these cases is that the promise must have induced the accused to confess. *Reynolds,* 327 Md. at 509, 610 A.2d 782.

Examples of cases wherein improper inducements rendered a confession inadmissible include *Hillard v. State,* 286 Md. 145, 153, 406 A.2d 415 (1979), where the accused was told the police would "go to bat for him" if he made a statement; *Lubinski v. State,* 180 Md. 1, 22 A.2d 455 (1941), improper inducement to tell the suspect that giving a statement would "help him a lot"; and *Streams v. State,* 238 Md. 278, 281, 208 A.2d 614 (1965), statement not voluntary where police told suspect they would try to get him probation if he talked.

The case *sub judice* offers no such carrot stick for appellant's confession. Officer Mills testified that he did not say that appellant would receive a lesser penalty if he talked, and he did not represent that it would be easier on him if he

confessed. He denied telling appellant that he would help him, or that he would get him a better deal with the State's Attorney if he talked. What Officer Mills did indicate to appellant was that he would inform the prosecutor that appellant had given a statement and was cooperative. Assuming that appellant concluded that the State would be favorably impressed upon receiving such advice, which is a perfectly reasonable assumption, that conversation does not rise to the level of an improper inducement that would invalidate his confession. We perceive no error in the trial court's denial of the motion to suppress.

### Re–Opening State's Case

After the jury began deliberating, the trial judge received two requests from the jury asking to see appellant's confession, which had not been introduced at trial. The first inquiry was answered by the judge telling the jury that the document they sought had not been introduced into evidence. Approximately one hour later, the jury sent a second written message asking, "The report or confession of the defendant—is it evidence, or is it an exhibit—for jury's perusal?" The prosecutor suggested:

I think they should be told that the evidence presented from the stand of the confession is evidence they are to consider. The physical document is not for their perusal.

Appellant's counsel agreed. The court then gave the following instruction:

The actual written document that the two officers were referring to in their testimony is not in evidence. Therefore, you can't consider the written document since you don't have it in front of you. You can consider what it says. You may consider what the written document says that you heard in testimony. Does that answer your question?

The foreman of the jury responded to the court's inquiry, stating:

Your Honor, there seems to be a need from a certain juror to see actual physical evidence of the defendant's initials

that he initialed giving this confession, in other words, what he said and then he initialed it.... Somebody wants to be pleased to themselves that the defendant actually made the confession and verified it with his initials.

The prosecutor then moved to reopen the State's case for the purpose of admitting the statement into evidence. Over objection by appellant's counsel, the court granted the State's motion. Officer Willis was recalled, and a redacted version of the confession was admitted into evidence.[2] After deliberating for another hour, the jury again inquired of the court:

Is it possible to get additional information on the length of jacket worn by defendant?

The court responded:

The answer is you have to rely upon the evidence that you have seen and heard during the trial. I can't retry this case for you, ladies and gentlemen of the jury.

The following day the jury returned verdicts of guilty of armed robbery and a handgun violation. The total time that the jury deliberated was approximately four hours.

■ Generally, trial judges have broad discretion to reopen a case to receive additional evidence. *Hunt v. State*, 321 Md. 387, 405–06, 583 A.2d 218 (1990), *cert. denied*, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). The discretion to reopen a case for additional proof after the jury has begun deliberations, however, must be exercised with utmost caution. One of the reasons is evidenced from the trial judge's comment to the jury in the present case after the jury's third request for additional evidence. The court said, "I can't retry the case for you." In other words, the trial must come to an end at some point. Secondly, new or additional evidence admitted during jury deliberations may be accorded undue emphasis which, conceivably, prejudices the party against whom the evidence is offered. *See Eason v. United States*, 281 F.2d 818, 822 (9 Cir.1960), *cited in Dyson v. State*, 328

---

2. The redacted statement apparently blocked out any reference to appellant's involvements in unrelated crimes.

Md. 490, 502, 615 A.2d 1182 (1992). Thirdly, the quality of the judicial process is unnecessarily diminished if one side or the other is permitted to fill the gaps in a case after jury deliberations begin. A right to reopen should not overshadow due diligence.

■ In *Dyson, supra,* the victim of an assault and theft testified that she could identify a name brand radio stolen from her home after the assault because she had tied a knot in a band inside the radio in order that she could change stations. Four hours after jury deliberations began, the court received a note stating that "one of the jurors is interested in the victim showing us the knot in the radio." [3]. Over objection, the trial court permitted the victim to point out the knot in the disassembled radio. Defendant's request to cross-examine was denied by the court, apparently on the basis that the witness was not testifying, but clarifying what was already in evidence. The Court of Appeals reversed for the trial court's refusal to permit defense counsel's request to cross-examine the victim concerning the knot. The silent pointing, the Court stated, constituted additional evidence, citing the Federal Rules of Evidence stating that assertive conduct and verbal statements may be equivalent.

Obviously, some discretion to reopen a proceeding during jury deliberations must be accorded trial judges to avoid a miscarriage of justice. For example, a trial judge could not reasonably be expected to refuse a request to reassemble a jury prior to a verdict being rendered, where the court receives irrefutable evidence that the trial has proceeded against the wrong identical twin.

The Court in *Dyson* stated that although the request to recall the witness came from a juror rather than from a party, "[t]he evidence was concluded, and the jurors should have been instructed to decide the case on the evidence before them." Thereafter, the Court suggested that if cross-exami-

---

3. Apparently the jury, having been furnished with screwdrivers, could not open the radio.

nation on the additional evidence had been allowed, reversal may not have been necessary. We interpret that to mean that the error could have been harmless when the totality of all the evidence was considered.

The State suggests that the present case is no different than the "harmless error" conclusion we adopted in *Garbutt v. State*, 94 Md.App. 627, 618 A.2d 272 (1993). In that case, a firearms expert testified and demonstrated for the jury three methods of loading a semiautomatic rifle. The jury, during its deliberations, asked to be shown again the three ways the gun could be loaded. (Why the jury needed to have repeated what it had already observed is unclear.) The expert had been dismissed, but the court fashioned a solution. The court bailiff, who was present during the expert's testimony, was permitted to demonstrate and explain the various loading procedures. Defense counsel objected to the bailiff's oral comments as being additional testimony.

We held that the substitution of the court bailiff for the firearms expert was inappropriate, but if it was error, it was harmless error, because the demonstration was merely a clarification of evidence that had been previously presented to the jury. We disagree with the State's view that the present case is a clone of *Garbutt*. The physical demonstration in *Garbutt* was agreed to by defense counsel; in the present case, appellant's counsel strenuously objected to the reopening of the case. In the case before us, furthermore, the introduction of the statement was additional evidence of the authenticity of the confession, whereas the *Garbutt* evidence was solely repetitive. Most importantly, the evidence admitted in this case prejudiced the accused; in *Garbutt* there was no prejudice.

In the case *sub judice* it is apparent that at least one juror had some doubt that the confession that was orally presented actually contained appellant's signature or initials authenticating the document. Permitting the State to bolster its case by redacting the document and introducing it into evidence was unquestionably additional evidence.

The State's case was enhanced by the additional support resulting from the authentication, which apparently resolved a doubt in the mind of at least one juror. Whether a guilty verdict would have resulted in the absence of this additional corroborative evidence is pure speculation. Appellant was clearly prejudiced by this turn of events, and the State offers no explanation for failing to introduce the exhibit into evidence at the time it was read to the jury. Whether the tardy evidence was given undue emphasis or prominence by the jury at this stage of the proceedings we cannot determine.

The right to cross-examine after additional evidence is introduced during a reopening was, unlike the *Dyson* scenario, not requested in either the present case or in *Garbutt*. The failure to request cross-examination, however, is not dispositive of the case, because the prejudice to appellant had already taken place. Cross-examination could not dilute the potential prejudice to appellant.

In *Dyson, supra,* the Court cited *People v. Olsen,* 34 N.Y.2d 349, 357 N.Y.S.2d 487, 313 N.E.2d 782 (1974), discussing when reopening should be allowed.

As the Court of Appeals of New York pointed out, the presentation of evidence must come to an end at some time, and the parties must be forewarned that the desirability of maintaining an orderly trial process militates strongly against receiving evidence at that stage of the trial. A premium must necessarily be placed on preparation and diligence, and evidence which is simply the product of an afterthought, no matter how pertinent it may have been if timely offered, will not, except in the most extraordinary circumstances, be received at this late stage of the proceedings.

The trial judge had it right the first time; the reopening should have been denied. We cannot say that the error was harmless. Appellant, therefore, is entitled to a new trial.

## Excusing a Juror

After exhausting his peremptory strikes, appellant moved to strike juror No. 6 for cause, stating that she had been looking

at him and appeared to be "in pain, frightened, or about to cry." The motion was denied and the jury was excused for the day. Immediately thereafter, juror No. 6 ran toward the door crying and saying, "I've just got to get out of here. I can't stand it anymore."

The following day, the trial court asked juror No. 6, "Are you physically and mentally able to serve as a juror today?" She replied, "Yes," and apologized for her prior conduct. She said, "I'm sorry I lost it yesterday." A second motion to strike juror No. 6 was denied.

■■ In determining motions to disqualify for cause, the proper focus is on the prospective juror's state of mind, and whether there is some bias, prejudice, or preconception. *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993). The trial judge was in the best position to assess the juror's suitability to serve. She was accepted after *voir dire* on day one of the trial and deemed qualified after personal observation and brief questioning on day two. We perceive no error.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR NEW TRIAL.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.