828 A.2d 249

Gerard HARRISON

v.

STATE of Maryland.

No. 1037, Sept. Term, 2002.

Court of Special Appeals of Maryland.

June 30, 2003.

Jason A. Lyons, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Steven L. Holocomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before DAVIS, KRAUSER, BARBERA, JJ.

DAVIS, J.

Appellant Gerald Harrison[1] filed a motion to suppress, which was heard on June 10, 2002 in the Circuit Court for Baltimore City (Brown, J.). Proceedings resumed on June 11, 2002, at which appellant's motion was denied. On June 12, 2002, the parties proceeded on an agreed statement of facts. Appellant was found guilty of attempted second degree murder and use of a handgun in the commission of a felony or crime of violence. He was subsequently sentenced to twelve years' imprisonment for attempted second degree murder and to a concurrent five-year term of imprisonment for the use of a handgun in the commission of a felony.

---

1. He is also later referred to by the name of "Fats."

Appellant noted his timely appeal on June 14, 2002 and presents two questions for our review, which we rephrase as follows:

I. Did the trial court err by denying appellant's motion to suppress his confession as involuntary?

II. Was the evidence sufficient to sustain appellant's conviction for attempted second degree murder?

We answer appellant's first question in the negative and his second question in the affirmative, thereby affirming the judgment of the circuit court.

## FACTUAL BACKGROUND

At trial, the case against appellant proceeded by way of an agreed not guilty statement of facts.

The facts would be that on July 27th in the year 2001 in the fifteen hundred block of Clifton Avenue, the victim in this matter, Mr. James Cook, was standing and talking with friends when he was struck in the neck with a bullet. Investigation revealed that the [appellant] and another unknown person were shooting at someone known only to them as Valentine, and in the course of the shooting accidentally struck the victim Mr. Cook.

Your honor, a witness was identified, he was taken down to the station and shown a photo array. He observed the photo array and picked out the [appellant] who would be identified in court here today as [appellant] to my right with counsel. As the person he knows as Fats and as one of the shooters. I believe the photo array is already in evidence in the court file from the motions hearing. Conditionally the [appellant] was advised of his rights. He waived his constitutional rights and he did give a statement that was taped.

I believe that and the advisement of rights are already in the court file as well from evidence and motions hearings. During the statement the [appellant] advised that he and a person known to him as Twin Shitty[2] began firing on a

---

**2.** "Twin Shitty" is the only known name of appellant's cohort in the shooting incident.

person that they knew as Valentine. The [appellant] stated that he had one gun and the other person had two guns, stating that he fired six shots, and then they both ran. Found out later that somebody other than their intended target was shot.

If called to testify, the ballistics examiner would have stated that the ballistics evidence recovered from the crime scene was consistent with the [appellant's] confession and that ballistics show that there were three different fire arms [sic] used, and they matched the caliber that the [appellant] described.

The victim was taken to Sinai Hospital where he was operated on. All events occurred in Baltimore City, State of Maryland. That would be the statement supporting the guilty plea as a count two, attempted murder in the second degree and count six, use of a handgun in the commission of a crime of violence.

Prior to trial, defense counsel filed a motion to suppress appellant's statement to police in which he admitted involvement in the alleged offenses. Detective Sergeant Massey of the Baltimore City Police Department testified at the suppression hearing that, after appellant was arrested, he advised appellant of his constitutional rights and appellant waived his rights. Detective Massey further testified that he informed appellant that the police were investigating a shooting incident. Appellant responded that he had information; however, he wanted to relate directly his version of what happened to the State's Attorney instead of to the detective. Detective Massey informed appellant that appellant could not directly convey information concerning the offenses under investigation to the State's Attorney because the State's Attorney would then become a witness in the case. Detective Massey told appellant that appellant could talk directly with the detective and that he would then forward appellant's statement to the Office of the State's Attorney. After their discussion, appellant agreed to give a statement and Detective Massey recorded appellant's statement on audiotape.

Detective Ronald J. Ciraolo, Jr., testified that he was present, along with Detective Massey, at appellant's interview. He also testified that appellant asked Detective Massey whether he could speak to the State's Attorney. According to Detective Ciraolo, Detective Massey replied that appellant had to speak directly to Detective Massey and he would forward the information to the State's Attorney.

Additional facts will be supplied as necessary and relevant.

## LEGAL ANALYSIS

### I

██ Appellant first contends that the trial court erred by denying his motion to suppress his confession as involuntary. The motion was heard on June 10, 2002 and subsequently denied on June 11, 2002. He argues that his confession was involuntary based on improper inducements by the police.

██ Under Maryland law, confessions must "be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." *Hillard v. State,* 286 Md. 145, 150, 406 A.2d 415 (1979). If a confession is induced either by threatening harm or by promising some sort of advantage then it should be excluded. *Reynolds v. State,* 327 Md. 494, 507, 610 A.2d 782 (1992). We have formulated a two-part test for determining whether a confession is voluntary and thus not induced:

[I]f 1) a police officer or an agent of the police force promises or implies to a suspect that he or she will be given special consideration from a prosecuting authority or some other form of assistance in exchange for the suspect's confession, and 2) the suspect makes a confession in apparent reliance on the police officer's statement.

*Winder v. State,* 362 Md. 275, 309, 765 A.2d 97 (2001).

Appellant contends that the exchange between Detective Massey and appellant from his recorded confession contains the promise that qualifies as an inducement and makes his confession involuntary.

[DETECTIVE] MASSEY: Now before we conclude this ah taped interview, I want to make sure how have you been treated since you [sic] been with us[.]

[APPELLANT]: Alright.

[DETECTIVE] MASSEY: Okay. Have ah we in any way threatened you?

[APPELLANT]: No.

[DETECTIVE] MASSEY: Have we promised you anything?

[APPELLANT]: No.

[DETECTIVE] MASSEY: Okay. Ah and

[APPELLANT]: I talk, I talked with the State[']s Attorney.

[DETECTIVE] MASSEY: Then I, that I told you that I will take this information to the State[']s Attorney.

[APPELLANT]: And you going to bring, bring me down there to speak with her.

[DETECTIVE] MASSEY: Okay and I told you once I make the appointment with the State[']s Attorney you'd be able to, and why were you going to come and tell the State[']s Attorney, exactly what you told me?

[APPELLANT]: Right.

[DETECTIVE] MASSEY: Okay, so that's the one thing you want the State[']s Attorney to know the facts of what happened, is that correct?

[APPELLANT]: Yeah and I want to know what type of time I been [sic] looking at [sic].

[DETECTIVE] MASSEY: Okay. But has anyone promised you anything when it came to any . . . any of the statement or anything, that was the one thing you just said, *you wanted to be understood that you wanted the State[']s Attorney to know what all happened, is that correct?*

[APPELLANT]: Right.

The trial court ruled that the above exchange did not amount to an inducement and thus denied appellant's motion to suppress.

■ In reviewing a ruling on a motion to suppress evidence, we look exclusively to the record of the suppression hearing. *Wengert v. State,* 364 Md. 76, 84, 771 A.2d 389 (2001); *Tu v. State,* 336 Md. 406, 412, 648 A.2d 993 (1994). We accept the facts as found by the trial judge unless they are clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). Additionally, "we give 'due regard to the opportunity of the trial court to judge the credibility of the witnesses.'" *Id.* (quoting Md. Rule 8–131(c)).[3]

In the case *sub judice,* the trial judge underscored when he ruled on appellant's motion to suppress that his ruling was based upon the credibility of the witnesses when he stated:

Quite frankly, counsel, as far as your client's credibility is concerned, I do not believe his assertions. It's, [i]t's on that issue, the issue of credibility, he fails miserably. I simply do not believe what he told this court.

. . .

There was no indication of a promise to induce this young man to give the statement. I find and I'm convinced by preponderance that the statement is voluntary. Motion to suppress is denied.

Although we are constrained to accept the court's decision not to credit appellant's testimony, we must determine whether the inquiry, "... you wanted the State[']s Attorney to know what all happened, is that correct?" constituted an improper inducement. We hold that Detective Massey's statement did not constitute an improper inducement. The Court of Appeals has held that, when an officer indicated to a suspect that he would "go to bat for him" with the State's Attorney, there was an inducement. *Hillard v. State,* 286 Md. 145, 153, 406 A.2d

---

3. **(c) Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

415 (1979). By contrast, when an officer has simply stated that "it would be better if he told the truth," the Court has held that this does not constitute an inducement. *Ralph v. State,* 226 Md. 480, 486–87, 174 A.2d 163 (1961).

We observed in *Boyer v. State,* 102 Md.App. 648, 653, 651 A.2d 403 (1995)(citing *Reynolds v. State,* 327 Md. 494, 509, 610 A.2d 782 (1992)), that "[a] common thread present in these cases is that the promise must have induced the accused to confess." Judge Getty, writing for the Court in *Boyer,* succinctly engaged in a proper analysis in a case similar to the case at hand:

> The case *sub judice* offers no such carrot stick for appellant's confession. Officer Mills testified that he did not say that appellant would receive a lesser penalty if he talked, and he did not represent that it would be easier on him if he confessed. He denied telling appellant that he would help him, or that he would get him a better deal with the State's Attorney if he talked. What Officer Mills did indicate to appellant was that he would inform the prosecutor that appellant had given a statement and was cooperative. Assuming that appellant concluded that the State would be favorably impressed upon receiving such advice, which is a perfectly reasonable assumption, that conversation does not rise to the level of an improper inducement that would invalidate his confession. We perceive no error in the trial court's denial of the motion to suppress.

*Id.* at 653–54, 651 A.2d 403.

Advisement that Officer Mills would inform the prosecutor that Boyer had given a statement and was cooperative, even assuming Boyer believed conveying the information would be helpful, is strikingly similar to appellant's belief that his cause would be aided by Detective Massey's assurances that the prosecutor would be apprized of his version of what occurred. We held there was no improper inducement in *Boyer* and, for the reasons we rejected the claim of improper inducement in that case, we hold that the lower court properly denied appellant's motion to dismiss.

## II

Appellant next contends that the evidence was not sufficient to sustain his conviction for attempted second degree murder. Specifically, the State must show, he posits, that appellant possessed the specific intent to kill James Cook, who was a bystander and became an unintended victim. Appellant's argument, replies the State, is without merit because he "was not convicted under the specific intent to kill variety of attempted second degree murder, but instead, was convicted under the theory of either concurrent intent or depraved heart murder."

The instant case was decided upon an agreed not guilty statement of facts. We explained in *Covington v. State,* 34 Md.App. 454, 455, 367 A.2d 974 (1977):

The plea of not guilty, accompanied by an "Agreed Statement of Facts[,]" is a peculiar animal. As was succinctly stated in *Barnes v. State,* 31 Md.App. 25, 35, 354 A.2d 499, 505 (1976),

Under an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. If there is agreement as to the facts, there is no dispute.

Thus, our task in the case *sub judice* is to make a legal determination from the facts, as agreed upon, by the parties, whether such facts are sufficient to sustain appellant's conviction for attempted murder in the second degree.

Appellant challenges the sufficiency of the evidence, assuming his conviction was based on the doctrine of transferred intent. We discussed the doctrine in *Williams v. State,* 117 Md.App. 55, 60, 699 A.2d 473 (1997):

We stated in *Ford [v. State,* 330 Md. 682, 625 A.2d 984 (1993),]* that transferred intent does not apply to attempted

murder [*Poe v. State,* 341 Md. 523, 529, 671 A.2d 501 (1996)] (disapproving application of the doctrine of transferred intent to attempted murder in *State v. Wilson,* 313 Md. 600, 546 A.2d 1041 (1988)). The doctrine of transferred intent does not apply to attempted murder when there is no death. *Poe* made it clear, 341 Md. at 530, 671 A.2d 501, that when the unintended victim is not killed, the transferred intent doctrine will not apply:

> In *Ford,* we made clear that if a defendant intends to kill a specific victim and instead wounds an unintended *victim without killing either,* the defendant can be convicted only of the attempted murder of the *intended* victim and transferred intent does not apply. This is not true where, as in the case *sub judice,* the defendant intends to murder one victim and instead kills an unintended victim.

■ Thus, if a defendant intends to shoot and kill one individual and, instead, misses and *injures* another, the defendant may be convicted of attempted murder of the intended individual, but the doctrine of transferred intent will not apply to the unintended victim. *Ford,* 330 Md. at 714, 625 A.2d 984. Appellant is therefore correct in asserting that the doctrine of transferred intent cannot be used to sustain his attempted murder conviction.

■ Citing *Alston v. State,* 339 Md. 306, 662 A.2d 247 (1995), the State argues that appellant's "guilt can be analyzed under the depraved heart variety of second degree murder." Appellant, in his reply brief, counters that depraved heart murder is inapplicable because "it is well[ ]settled under Maryland law that the only form of attempted murder is that which involves a specific intent to kill." In *Abernathy v. State,* 109 Md.App. 364, 374–75, 675 A.2d 115 (1996), we reasoned:

> Turning attention to the closely related inchoate homicide of attempted murder, we note that the law is also now well settled that the *mens rea* of a specific intent to inflict grievous bodily harm, adequate to support a conviction for consummated murder, will not sustain a conviction for attempted murder. In *Earp v. State,* 76 Md.App. 433, 545

A.2d 698 (1988), the conviction was for attempted murder in the second degree. The trial judge, in a court trial, found that Earp did not harbor a specific intent to kill but only a specific intent to inflict grievous bodily harm. This Court reversed the conviction, pointing out the inadequacy of the intent to commit grievous bodily harm to sustain a conviction for the inchoate homicide:

> A conviction for attempted second degree murder may not be sustained upon proof that the accused intended only to commit grievous bodily harm; a conviction for attempted second degree murder may only be sustained if the perpetrator is found to have harbored the intent to kill his victim. [*Earp*,] 76 Md.App. at 440, 545 A.2d at 702.

The Court of Appeals, in *State v. Earp*, 319 Md. 156, 164, 571 A.2d 1227 (1990), in affirming our decision, reasoned that, "where an attempted murder is charged, the State must show a specific intent to kill—an intent to commit grievous bodily harm will not suffice."

In *Abernathy*, 109 Md.App. at 375–76, 675 A.2d 115, Judge Moylan, writing for the Court, spoke directly to the requisite *mens rea* to sustain a conviction for the so-called attempted depraved heart murder:

> By parity of reasoning, we have no difficulty in completing the matrix and holding squarely that the *mens rea* of a wanton disregard for human life, which will support a conviction for depraved-heart murder should death result, will not support a conviction for antecedent attempted murder. For an attempted murder in either degree (and even for an attempted voluntary manslaughter) nothing but the specific intent to kill will serve as the necessary *mens rea*.

The instruction in this case on the subject of depraved-heart murder was not only inadequate but affirmatively misleading. As the State agrees, the conviction for attempted murder must be reversed. To borrow the expression of the appellant, which though technically imprecise is none-

theless effectively expressive, there is no such crime as attempted depraved-heart murder.

From the foregoing, an attempt to commit a crime requires a specific intent and, given that the *mens rea* required for depraved heart murder only requires a wanton disregard for human life, such a mental state falls short of that required to equate to the necessary specific intent. Appellant's conviction, therefore, cannot rest, as the State suggests, on a theory of depraved heart second degree murder.

■ Turning to the theory of concurrent intent, appellant claims that "[t]he State's approach improperly attempts to eliminate the requirement of specific intent to kill from the principle of concurrent intent, an approach which directly contravenes *Ford v. State, supra* [,] 330 Md. at 717, 625 A.2d 984." More specifically, appellant laments:

> In the instant case, the evidence is insufficient to show an intent to kill any of the bystanders surrounding the intended victim, and, thus, to uphold [appellant's] conviction for attempted second[ ]degree murder of James Cook based on concurrent intent, would vitiate the well-established principle that the transferred intent doctrine does not apply to attempted murder. *See e.g. Poe v. State,* 341 Md. 523, 529, 671 A.2d 501 (1996).

Writing for the Court of Appeals in *Ford,* 330 Md. at 716–17, 625 A.2d 984, Judge Chasanow explicated:

> The intent is concurrent, on the other hand, when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity. For example, an assailant who places a bomb on a commercial airplane intending to harm a primary target on board ensures by this method of attack that all passengers will be killed. Similarly, consider a defendant who intends to kill A and, in order to ensure A's death, drives by a group consisting of A, B, and C, and attacks the group with automatic weapon fire or an explosive device devastating enough to kill everyone in the group.

The defendant has intentionally created a "kill zone" to ensure the death of his primary victim, and the trier of fact may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim. When the defendant escalated his mode of attack from a single bullet aimed at A's head to a hail of bullets or an explosive device, the fact[ ]finder can infer that, whether or not the defendant succeeded in killing A, the defendant concurrently intended to kill everyone in A's immediate vicinity to ensure A's death. The defendant's intent need not be transferred from A to B, because although the defendant's goal was to kill A, his intent to kill B was also direct; it was concurrent with his intent to kill A. Where the means employed to commit the crime against a primary victim create a zone of harm around that victim, the fact[ ]finder can reasonably infer that the defendant intended that harm to all who are in the anticipated zone. This situation is distinct from the "depraved heart" situation because the trier of fact may infer the actual intent to kill which is lacking in a "depraved heart" scenario.

(Footnote omitted.)

 Whether the nature and scope of the attack are such that one could conclude that the perpetrator intended to insure harm to the primary victim by harming those in the immediate vicinity is a question of fact. The State need only produce evidence that a defendant escalated the mode of attack from one exclusively directed at the intended victim to a mode in which all those in the immediate vicinity of the intended victim are put at risk by the actions of the assailant.

In the case *sub judice,* appellant, accompanied by an accomplice who had two guns, fired six shots at a person they knew as Valentine, the intended victim. The statement of facts indicated that James Cook, the actual victim, was standing and talking with friends when he was struck in the neck by a bullet. The statement of facts further disclosed that "the ballistics evidence recovered from the crime scene was consistent with the [appellant's] confession and that ballistics show

that there were three different firearms used, and they matched the caliber that the [appellant] described." Thus, the fact finder could infer from the statement of facts that there were several people assembled in the 1500 block of Clifton Avenue on July 27, 2001, that they were showered with a hail of bullets numbering at least six from appellant's firearm alone, and that appellant and his accomplice put all those who were gathered at the scene of the crime at risk of being fatally injured. The evidence was more than sufficient to show directly and inferentially that appellant and his accomplice had intentionally created a "kill zone" to accomplish the death of Valentine, the primary victim. We therefore hold that the evidence was sufficient to sustain appellant's conviction of attempted second degree murder on a theory of concurrent intent.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**