903 A.2d 870

**STATE of Maryland**

v.

**Terrell BRADY.**

**No. 27, Sept. Term, 2004.**

Court of Appeals of Maryland.

July 28, 2006.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Petitioner.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

In this case, we address whether the doctrine of transferred intent applies to attempted murder when an unintended victim is injured, but not killed. The Court of Special Appeals, in an unreported opinion, held that the doctrine does not apply in that situation. We agree and, therefore, shall affirm.

## A.

Several shootings occurred on May 3, 1998, in the 5600 block of Lothian Drive in Baltimore City. James Jones ("James"), and Gregory White ("White") were inside the residence at 5649 Lothian Drive, while JoAnn Lee ("Lee") and Jonathan Jones ("Jonathan") were seated in a car outside the residence. The shots were fired into the first floor apartment and also into the car in which Lee and Jonathan were seated. Broken glass from the shattered car windows injured Jonathan, and White, a teenager who was watching television in the apartment, was shot in the legs as he attempted to run upon observing James running through the apartment, followed by two men, who were shooting at him. Witnesses identified the respondent, Terrell Brady (Brady) as one of the individuals involved in the shootings. Consequently, Brady was arrested and charged, *inter alia*, with two counts of

attempted first degree murder, one as to James, the intended victim, and the other as to White, the unintended victim. He was subsequently tried by a jury in the Circuit Court for Baltimore City and convicted of those, and related handgun, charges.

At the conclusion of the case and after instructing the jury with respect to attempted murder, the trial court gave the following instruction on transferred intent:

"If there is an intent to kill one victim, in the course of the attack on that victim—strike that. If there is an intent to kill a specific person or victim, in the course of an attack on that intended victim, another person is injured instead, the intent to kill the intended victim may be transferred to the act committed against another victim. It's known as transferred intent. Let me give you an example of that. I'm a terrible shot, and I intend to kill my court clerk. I aim, fire, miss her, strike Mr. Walker, the intent to kill my court clerk is transferred from her to Mr. Walker. But ... the intent must be triggered toward a specific person, and the act must be triggered toward a specific person at that time."

During its deliberations, the jury sent the court a note seeking clarification on that issue. Acknowledging that it was "having difficulty with the 'TRANSFER,'" the jury wanted to know, "if one is not the intended victim but becomes the victim, does the law demand the transference of the charge?"

The trial judge responded to the question with the following instruction:

"The doctrine of transfer intent applies to specific intent to murder. Transfer intent means that if one specifically intends injury to another person, and in an effort to accomplish the injury or harm upon a person, other than—strike that. Transfer intent means that if one specifically intends injury to another person, and in an effort to accomplish the injury, or harm upon another person, someone other than the person intended to be injured, he is guilty of the same kind of crime as if his aim had been more accurate. The

fact that a person actually was killed instead of [the] intended victim is immaterial and the only question is what would have been [the] intended victim is immaterial and the only question is what would have been [the] degree of guilt. If the result intended actually had been accomplished, the intent to transfer to the person whose death or harm has been caused. Now that is [the] law in the murder case. Remember, your [sic] are dealing with an attempt to murder. As to attempt to murder, intent to murder, same principle applies."

Neither the State nor defense counsel objected to this instruction.

As indicated, Brady was convicted of the attempted murder charges and the related handgun charges. He was sentenced to consecutive terms of twenty and twenty-five years imprisonment for the attempted murder convictions and five and fifteen years imprisonment for the two handgun convictions. Brady noted an appeal to the Court of Special Appeals, which, in an unreported opinion, held that the Circuit Court committed reversible error by instructing the jury that the doctrine of transferred intent applied to the attempted murder of White. We granted the State's petition for writ of certiorari. *State v. Brady*, 381 Md. 674, 851 A.2d 594 (2004). We shall affirm.

### B.

Appellate courts have the discretion to recognize plain error in jury instructions. *See* Maryland Rule 4–325(e), which provides:

"(e) *Objection.* No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any

plain error in the instructions, material to the rights of the defendant, despite a failure to object."

Pursuant to this Rule, in order for an appellate court to exercise plain error review, there must be an "error," it must be "plain," and it must be "material to the rights of the defendant." Maryland Rule 4–325(e).

Interpreting Rule 757 h,[1] a predecessor Rule to Rule 4–325, this Court characterized the instances when an appellate court should take cognizance of unobjected to error as "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial," *State v. Hutchinson,* 287 Md. 198, 202, 411 A.2d 1035, 1038 (1980), and as those "which vitally affect[ ] a defendant's right to a fair and impartial trial," *State v. Daughton,* 321 Md. 206, 211, 582 A.2d 521, 523 (1990), *citing Hutchinson,* 287 Md. at 202, 411 A.2d at 1037–38, thus excluding the exercise of the discretion "as a matter of course," *id.,* and errors that are "purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Id.* at 203, 411 A.2d at 1038. This Court has further explained:

"[T]he appellate courts of this State have often recognized error in the trial judge's instructions, even when there has been no objection, if the error was likely to unduly influence the jury and thereby deprive the defendant of a fair trial. The premise for such appellate action is that a jury is able to follow the court's instructions when articulated fairly and impartially. It follows, therefore, that when the instructions are lacking in some vital detail or convey some prejudicial or confusing message, however inadvertently, the ability of the jury to discharge its duty of returning a true verdict based on the evidence is impaired. The responsibility for avoiding such circumstance rests with the trial judge who must advise the jury on every matter stemming from the

1. Maryland Rule 757 h provided that an appellate court may, in its discretion, "take cognizance of and correct any plain error in the instructions, material to the rights of the defendant even though the error was not objected to as provided by section f".

evidence which is vital to its determination of the issues before them."

*Id.* at 204, 411 A.2d at 1039. *See Sims v. State,* 319 Md. 540, 549, 573 A.2d 1317, 1321 (1990); *Dawkins v. State,* 313 Md. 638, 642, 547 A.2d 1041, 1043 (1988); *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977); *Dempsey v. State,* 277 Md. 134, 142, 355 A.2d 455, 459 (1976). *See also Jones v. State,* 379 Md. 704, 713, 843 A.2d 778, 784 (2004) (holding, *citing Hutchinson,* 287 Md. at 202, 411 A.2d at 1038, that there is no fixed formula for determining when discretion should be exercised, and there are no bright line rules to conclude that discretion has been abused).

Brady argues in this Court, as he did in the Court of Special Appeals, that the flawed jury instruction was an "error" in that it misstated the doctrine of transferred intent, it was "plain" in that it is "obvious" or "clear," *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 519 (1993), and it was "material" because it went directly to the essence of the crime of attempted murder. The Court of Special Appeals agreed, opining:

> "The error in this case was clearly one of commission. In responding to the jury's question, the circuit court instructed, in part, that the doctrine of transferred intent that applies in a murder case applies to the crime of attempted murder. In light of the jury's direct question, we are persuaded that appellant's right to a fair trial on the charge of attempted murder of White was fundamentally compromised.
>
> * * * *
>
> "Based on the verdict, it is apparent that the jury discredited [the] appellant's explanation about what occurred at [the] apartment. Although the State did not argue that the intent to kill James was transferred to White, we cannot conclude beyond a reasonable doubt that the jury did not transfer the intent to murder James in finding the appellant guilty of the attempted murder of White. Indeed, the jury sent a note asking: '[I]f one is not the intended victim but

becomes a victim, does the law demand a transference of the charge?' The circuit court should not have instructed the jury that the doctrine of transferred intent applied to attempted murder."

The State argues that the exercise of plain error review by the Court of Special Appeals was inappropriate. It contends that, because Brady did not, at trial, object to the jury instruction at the time, his claim is unpreserved. *See Conyers v. State,* 354 Md. 132, 167, 729 A.2d 910, 928–929 (1999). Moreover, it argues that even if the trial court erred in its instruction, plain error is not warranted because, while discretionary review of plain error may be exercised by the appellate courts if the circumstances are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial," 354 Md. at 171, 729 A.2d at 931, there is nothing compelling or exceptional in this case to justify such exercise. To support this argument, the State explains that Brady's conviction was supportable without resorting to transferred intent, and that the prosecutor did not, in his case, rely on the theory of transferred intent. Furthermore, the State argues that because the judge also instructed the jury on attempted first and second degree murder, and the Court of Special Appeals found that Brady's conviction of attempted first degree murder was sufficient, the instruction on transferred intent did not prejudice Brady in any way.

 As the intermediate appellate court recognized and held, and Rule 4–325 confirms, it is fully within the power of the intermediate appellate court to exercise plain error review when there are circumstances that are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Conyers,* 354 Md. at 171, 729 A.2d at 931. We agree with the Court of Special Appeals that the circumstances in the case *sub judice* meet those requirements, and reject the State's arguments that, because the conviction was supportable on other grounds, the additional instruction did not prejudice Brady. We have held previously that the accused is prejudiced when a trial court inaccurately supplies or

omits, in a jury instruction, an element of a charged offense. *See Richmond v. State,* 330 Md. 223, 623 A.2d 630 (1993) (holding that plain error existed where trial court instruction on malicious wounding with intent to disable omitted a specific intent instruction); *Franklin v. State,* 319 Md. 116, 571 A.2d 1208 (1990) (holding that plain error existed where trial court instructed jury that a specific intent to kill was not required to establish assault with intent to murder); *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988) (holding that plain error existed when the trial court omitted the essential element of knowledge from its instruction defining possession of a controlled substance). *See also Vincent v. State,* 82 Md.App. 344, 571 A.2d 874 (1990) (instructing the jury that the offense of malicious shooting with intent to disable was a "crime of violence" that could be used as a predicate offense for the crime of use of a handgun in the commission of a crime of violence was plain error). This approach has also been used by federal appellate courts. *See, e.g., United States v. Perez,* 43 F.3d 1131 (7th Cir.1994) (holding that the district court's instruction to the jury on assault with intent to commit murder that it could convict without finding a subjective specific intent to kill, as long as it found reckless and wanton conduct, was plain error); *United States v. Stansfield,* 101 F.3d 909 (3rd Cir.1996) (holding that omission from jury instruction of a substantial element was plain error).

C.

Having determined that the plain error review exercised by the Court of Special Appeals was not an abuse of discretion, we now consider whether the doctrine of transferred intent applies to the crime of attempted murder.

■ It has been well settled in this State since *Gladden v. State,* 273 Md. 383, 330 A.2d 176 (1974), that the doctrine of "transferred intent" is the law in Maryland, and that it acts as a substitute for the willfulness, deliberation, and premeditation required to make out a case of murder in the first degree. In that case, the defendant, in an attempt to kill his intended

victim, shot and killed a twelve-year old bystander. The question this Court had to decide was whether the defendant, in that circumstance, was guilty of first degree murder; whether, in other words, the intent he harbored for his intended victim would carry over and attach to the death of his unintended victim. We held that he was and that it did, 273 Md. at 404–405, 330 A.2d at 188, joining, in so doing, the "singular unanimity" of the majority of state decisions on the subject, in holding:

"that such a homicide 'partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the blow fallen upon the intended victim instead of the bystander.' Under this rule the fact that the bystander was killed instead of the victim becomes immaterial, and the only question at issue is what would have been the degree of guilt if the result intended had been accomplished."

273 Md. at 391–392, 330 A.2d at 180–181. Focusing specifically on the facts of Gladden's case and rejecting Gladden's argument that his intent as to his intended victim could not be transferred, the Court stated:

"Where, as here, there was evidence that the conduct of the petitioner, Gladden, in a reprobated state of mind, was willful, deliberate and premeditated toward Siegel, the *mens rea* for murder in the first degree was established, notwithstanding that the decedent was an unintended victim. All the elements of an intentional first degree killing were present. His responsibility for the ... conduct proscribed by the law cannot extenuate the offense because he did not kill his supposed enemy. The purpose and malice with which the shots were fired are not changed in any degree by circumstances showing that they did not take effect-because of bad aim-upon Siegel. Gladden's culpability under the law and the resultant harm to society is the same as if he had accomplished the result he intended when he caused the death of the innocent youngster. The punishment is imposed in accordance with the culpability of the accused under the law and justice is served by punishing him for a

crime of the same seriousness as the one he undertook to commit."

273 Md. at 404–405, 330 A.2d at 188.

The doctrine of transferred intent was expanded to include the offense of attempted first-degree murder in *State v. Wilson,* 313 Md. 600, 546 A.2d 1041 (1988). In that case, the defendant shot at Marvin Brown, 313 Md. at 601, 546 A.2d at 1042, but the bullet struck a third person instead, as a result of which that unintended victim was paralyzed. 313 Md. at 602, 546 A.2d at 1042. Wilson was convicted of two counts of attempted first degree murder; specifically, attempted murder of both Brown, the intended victim, and of the unintended, now-paralyzed, victim. 313 Md. at 602, 546 A.2d at 1042.

This Court reversed the Court of Special Appeals, which had refused to apply the doctrine of transferred intent, believing it applied only to crimes involving or requiring a general intent. 313 Md. at 602, 546 A.2d at 1042. Noting that *Gladden* had established the doctrine of transferred intent in Maryland, *id.* at 603, 546 A.2d at 1043, and that "the very crime to which the doctrine was applied in *Gladden* was first degree premeditated murder, unquestionably a specific. intent crime," *id.* at 604, 546 A.2d at 1043, it rejected the intermediate appellate court's rationale. Accordingly, this Court opined that the doctrine's applicability "extended to all situations where a defendant's intended act (which in all other respects constitutes a crime) 'affects' or 'inflicts harm upon' an unintended victim." *Id.* In so doing, we aligned ourselves with numerous other jurisdictions holding that the transferred intent doctrine applies to attempted murder. *Id.* at 607–609, 546 A.2d at 1045, *citing People v. Neal,* 97 Cal.App.2d 668, 218 P.2d 556 (1950), *People v. Humes,* 78 Ill.App.3d 255, 33 Ill.Dec. 797, 397 N.E.2d 130 (1979), *Norris v. State,* 275 Ind. 608, 419 N.E.2d 129 (1981), *State v. Thomas,* 127 La. 576, 53 So. 868 (1910), *State v. Gillette,* 102 N.M. 695, 699 P.2d 626 (1985).

Thus, this Court concluded that it was unnecessary for the State to show that the defendant's malice was directed against

the injured party in order to prove an attempted murder charge. It explained, referencing *Gladden:*

"In Maryland, criminal attempt requires a specific intent to commit the crime attempted. The Court of Special Appeals interpreted this requirement to mean that the crime of attempted murder requires a specific intent to kill the victim named in the indictment. We disagree. To be sure, attempted murder is a specific intent crime. However, the intent required is merely the intent to kill *someone.*
. . .

\* \* \*

"[I]t is clear that the only difference between the crime of attempted murder and completed first degree (specific intent to kill) murder is that in the former the victim survived whereas in the latter the victim died. Moreover, the criminal conduct required to constitute an attempt to commit murder must be defined in terms of the conduct required to constitute the completed crime. In other words, a defendant such as Wilson, in order to be guilty of an attempted first degree (premeditated) murder, must harbor the same *mens rea* as that required for a completed murder.

"Murder is homicide committed with malice aforethought. *Gladden, supra,* 273 Md. at 403, 330 A.2d at 187. In Wilson's case, the State proved the malice element by establishing Wilson's specific intent to kill Marvin Brown. Therefore, since under our decision in *Gladden*[,] Wilson would have been guilty of premeditated murder had the unintended victim ... died, the elements of attempted murder were satisfied when [the victim] survived."

313 Md. at 605–606, 546 A.2d at 1043–1044 (footnote and some citations omitted).

The *Wilson* holding was called into question with the filing of our decision in *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993). In *Ford,* this Court, albeit in dictum,[2] stated that

---

2. We recognized the discussion of transferred intent as dictum, characterizing it as "an important, albeit somewhat collateral issue." *Ford v. State,* 330 Md. 682, 708, 625 A.2d 984, 996 (1993).

*Wilson* should not have applied transferred intent to attempted murder. 330 Md. at 714, 625 A.2d at 999. Ford was convicted in the Circuit Court for Prince George's County of, *inter alia,* eleven counts of assault with intent to disable, resulting from his participation in a scheme whereby traffic on the Capital Beltway was caused to slow and large rocks were thrown at cars, which resulted in sever damage to the cars and injury to the occupants of the cars. 330 Md. at 689, 625 A.2d at 987.

At trial, the judge instructed the jury that if it found that Ford had assaulted with an intent to disable the drivers of the cars, then this intent could be transferred to the passengers. 330 Md. at 708–709, 625 A.2d at 996–997. Ford did not object to this instruction, and this Court concluded that the instruction, as given, was not reversible error. 330 Md. at 709, 625 A.2d at 997. Nevertheless, because the Court of Special Appeals addressed at some length the issue of transferred intent and its inapplicability to assault with intent to disable and related crimes, one of the reasons for which "may be inconsistent with prior indications by this Court that transferred intent applies to attempted murder and assault with intent to murder," *id.,* this Court perceived the need to comment on the intermediate appellate court's discussion, with which this Court agreed, and to clarify the issue. *Id.*

Although it agreed with the Court of Special Appeals that the statute pursuant to which Wilson was charged precluded the applicability of the transferred intent doctrine,[3] a matter it

---

3. When Ford was charged, Md. Code (1957, 1987 Repl. Vol.), Article 27, § 386 provided, in full:

"§ 386. Unlawful shooting, stabbing, assaulting, etc., with intent to maim, disfigure or disable or to prevent lawful apprehension.

"If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counsel-

discussed at some length, *see* 330 Md. at 709, 625 A.2d at 997, our primary focus was on the underlying nature of the crime of assault with intent to disable, which we also concluded precluded the applicability of the doctrine:

"It is a fundamental tenet of criminal law that a completed crime requires the concurrence of a *mens rea,* a guilty mind, and an *actus reus,* a bad act. The purpose of transferred intent is to link the mental state directed towards an intended victim, i.e., the intent to kill, maim, or disable that person, with the actual harm caused to another person. In effect, transferred intent makes a whole crime out of two component halves.... *Gladden* traced transferred intent back to its English common law heritage and the early cases it cited support the view that the doctrine was intended to enable conviction of a defendant of the crime he intended to commit only when that crime was not committed upon the intended victim.

\* \* \*

"The underlying rationale for the doctrine 3)27 suggests that transferred intent should apply only when, without the doctrine, the defendant could not be convicted of the crime at issue because the mental and physical elements do not concur as to either the intended or the actual victim.

\* \* \*

"... [T]ransferred intent makes a whole crime out of two halves by joining the intent as to one victim with the harm

ling, aiding or abetting such offender shall be guilty of a felony and, upon conviction thereof, be punished by confinement in the penitentiary for a period not less than eighteen months nor more than ten years."

A 1991 amendment removed the minimum term of punishment and increased the maximum term to fifteen years. Chapter 234 of the Acts of 1991 (codified at Md. Code (1957, 1992 Repl. Vol.), Art. 27, § 386). The Court relied on *Commonwealth v. Morgan,* 74 Ky. 601, 602 (1876) for this proposition, concluding, "[t]he analogy could not be more direct; the plain statutory language of § 386 precludes the application of transferred intent." *Ford v. State,* 330 Md. 682, 710, 625 A.2d 984, 997 (1993).

caused to another victim. Transferred intent does *not* make two crimes out of one. Where the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims."

330 Md. at 710–712, 625 A.2d at 997–998 (citations omitted).

The Court gave, as an example, *People v. Birreuta,* 162 Cal.App.3d 454, 208 Cal.Rptr. 635 (1984), in which the California intermediate appellate court opined:

" 'The function of the transferred intent doctrine [in first degree murder cases] is to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims. But for the transferred intent doctrine, such people could escape punishment for murder, even though they deliberately and premeditatedly killed-because of their "lucky" mistake. The transferred intent doctrine is borne of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good. It insures that such a defendant will not be allowed to defend against a murder charge by claiming to have made a mistake of identity, a poor aim or the like. " 'When the intended victim is killed, however, there is no need for such an artificial doctrine. The defendant's premeditation, deliberation, intent to kill and malice aforethought are all directly employable in the prosecution for murdering his intended victim. The accidental killing may thus be prosecuted as a manslaughter or second degree murder without ignoring the most culpable mental elements of the situation. There is no danger that a premeditated killing will go unpunished or be treated as a manslaughter because the murder of the intended victim will presumably be the subject of prosecution.' "

330 Md. at 712–713, 625 A.2d at 998–999, *citing Birreuta,* 162 Cal.App.3d at 460, 208 Cal.Rptr. at 638–639.

This Court, explaining that although the crime alluded to in *Birreuta* was first degree murder, its analysis was applicable to Ford's circumstances, adopted the rationale presented by

the California Court of Appeal. 330 Md. at 713, 625 A.2d at 999. It opined that because transferred intent was the "intent following the bullet" to make a completed crime,

> "the doctrine has no application when the bullet's terminus is irrelevant and the crime at issue is complete without invoking transferred intent. In *Birreuta,* where the defendant managed to complete the crime of murder against his intended victim, the court properly refused to transfer his intent to murder to another, unintended, victim. *Transferred intent is equally inapplicable to other circumstances where the subject crime is already completed as to an intended victim, such as attempts or other crimes that can be completed without the necessity of physical contact.* Such crimes have one thing in common-where the 'bullet' ends up is superfluous to the crime, so there is no need for the intent to 'follow the bullet' to link the crime's mental and physical elements. The crime at issue here, assault with intent to disable, is such a crime. Because the elements of an assault with intent to disable are (1) an assault and (2) an intent to disable, the crime is complete regardless of whether the projectile reaches its target. The requisite intent has already been formed and the requisite assault has already been committed; no intent need be transferred to complete a crime."

330 Md. at 713, 625 A.2d at 999 (emphasis added).

Noting that the result seemed contrary to the holding in *Wilson,* the Court observed:

> "We believe *Wilson* should not have applied transferred intent to attempted murder.[4] First, as we have noted, the purpose of transferred intent is not to multiply criminal liability, but to prevent a defendant who has committed all the elements of a crime (albeit not upon the same victim) from escaping responsibility for that crime. If the defendant charged with attempted murder, shot at but missed the

---

4. This Court explained that Wilson's conviction could have been upheld under the theory of concurrent intent. *Ford,* 330 Md. at 716–718, 625 A.2d at 1000–1001.

intended victim, *the defendant may still be convicted of attempted murder of that victim.* The completed crime has been committed on the intended victim, and the fiction of transferred intent would not so much transfer the intent as replicate it and apply it to another victim, thus making multiple specific intent crimes from one single act intended to injure one person.

\* \* \*

"A related reason why transferred intent cannot properly apply to attempted murder derives from the fact that the crime of attempted murder requires no physical injury to the victim. Although in *Wilson* the bystander was in fact injured, injury is not an essential element of attempted murder. Assuming an attempted murder scenario where the defendant fires a shot at an intended victim and no bystanders are physically injured, one sees that it is virtually impossible to decide to whom the defendant's intent should be transferred. Is the intent to murder transferred to everyone in proximity to the path of the bullet? Is the intent transferred to everyone frightened and thereby assaulted by the shot? There is no rational method for deciding how the defendant's intent to murder should be transferred."

330 Md. at 714–716, 625 A.2d at 999–1000 (emphasis added).

The *Ford* dicta transformed into holding in *Poe v. State*, 341 Md. 523, 671 A.2d 501 (1996). In that case, an unintended victim was killed when the bullet intended to kill the intended victim passed through her arm and struck the unintended victim. *Id.* at 526, 671 A.2d at 502. We held that the doctrine of transferred intent applied in that situation. *Id.* at 530–531, 671 A.2d at 504–505.

■ Noting the rationale explained in the *Ford* dicta, that the purpose the doctrine of transferred intent was to prevent a defendant from escaping liability for a murder in which every element had been committed, but there was an unintended victim, *Ford,* 330 Md. at 710, 625 A.2d at 997, the Court was clear and firm: "the doctrine of transferred intent

does not apply to attempted murder when there is no death." 341 Md. at 529, 671 A.2d at 504. That holding did not benefit the defendant, however, for the Court rejected his argument that, because he in fact shot the intended victim and therefore was convicted of her attempted murder, there was no intent left to transfer to the unintended victim. It explained:

"The defendant fails to recognize . . . that his intent was to murder, not to attempt to murder. Since Mr. Poe killed Kimberly, his intent to murder was 'transferred' from Ms. Poe to Kimberly. We agree with the State that the passing of the bullet through the arm of the intended victim before killing the unintended victim does not alter or negate the application of the doctrine of transferred intent. *A fortiori,* this is a classic case of transferred intent."

341 Md. at 528–529, 671 A.2d at 503. Thus, although the doctrine of transferred intent typically applies where a defendant, intending to kill A, shoots and misses A but kills unintended victim B, the intent to kill is not rendered non-transferable when the shot actually hits and wounds the intended victim and also kills an unintended victim. 341 Md. at 530, 671 A.2d at 504. That is so, the Court said, because the relevant inquiry is, not what the crime is denominated, but "what could the defendant have been convicted of had he accomplished his intended act?" 341 Md. at 530–531, 671 A.2d at 504.

The Court continued:

"Petitioner tries to unduly stretch our holding in *Ford* that the doctrine of transferred intent is inapplicable to attempted murder. We reject Poe's argument that because he completed the crime of attempted murder of his intended victim, the doctrine of transferred intent does not apply to the death of another person. In *Ford,* we made clear that if a defendant intends to kill a specific victim and instead wounds an unintended victim *without killing either,* the defendant can be convicted only of the attempted murder of the intended victim and transferred intent does not apply. . . . This is not true where, as in the case *sub judice,* the defendant intends to murder one victim and instead kills an

unintended victim. Here, transferred intent applies because there is a death and the doctrine is necessary to impose criminal liability for the murder of the unintended victim in addition to the attempted murder of the intended victim.... In *Ford,* this Court asserted that the doctrine is used when the defendant fails to commit the crime intended upon the targeted victim and completes it upon another....

Thus, the doctrine should be applied to the instant case." 341 Md. at 529–530, 671 A.2d at 504 (footnotes and citations omitted).

This issue was most recently considered by this Court in *Harrison v. State,* 382 Md. 477, 855 A.2d 1220 (2004). We characterized the issue in *Harrison* as "almost identical to the one debated in *Wilson, Ford,* and *Poe:* whether 'transferred intent' may apply in an attempted murder case, where a bystander has received a non-fatal injury." 382 Md. at 506, 855 A.2d at 1237. In *Harrison,* the defendant and a friend shot at their intended target, 382 Md. at 483, 855 A.2d at 1223–1224, but struck, instead, Cook, an unintended victim, in the neck. 382 Md. at 483, 855 A.2d at 1224. Harrison was convicted of the attempted second degree murder of Mr. Cook, under three separate theories—concurrent intent, transferred intent, and depraved-heart recklessness. 382 Md. at 485, 855 A.2d at 1225. The Court of Special Appeals rejected the "transferred intent," rationale, reasoning that, under *Ford,* the doctrine only applies when a defendant shoots at his target, misses, and an unintended victim receives a fatal injury. *Harrison v. State,* 151 Md.App. 648, 658, 828 A.2d 249, 254–255 (2003), *citing Ford,* 330 Md. at 714, 625 A.2d at 999. We agreed. 382 Md. at 506, 855 A.2d at 1237.

In so concluding, the *Harrison* court reviewed and summarized *Gladden, Wilson, Ford,* and *Poe,* and noted the numerous jurisdictions that had rejected the doctrine of transferred intent as applied to attempted murders of unintended victims. *See, e.g., Ramsey v. State,* 56 P.3d 675 (Alaska App.2002); *Jones v. State,* 159 Ark. 215, 251 S.W. 690 (1923); *People v. Bland,* 28 Cal.4th 313, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002); *State v. Hinton,* 227 Conn. 301, 630 A.2d 593 (1993);

*State v. Brady,* 745 So.2d 954 (Fla.1999); *State v. Williamson,* 203 Mo. 591, 102 S.W. 519 (1907); *People v. Fernandez,* 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910 (1996); *State v. Shanley,* 20 S.D. 18, 104 N.W. 522 (1905).

It opined:

"The most compelling reason why we reject the doctrine of transferred intent as applied to crimes of attempt is that it is not necessary to make 'a whole crime out of two halves by joining the intent as to one victim with the harm caused to another victim,' the purpose for which it was conceived. *Ford,* 330 Md. at 712, 625 A.2d at 998. When the unintended victim has not suffered a fatal injury, the defendant already has committed a completed crime against the intended victim, and the seriousness of that crime is as great as if the intent were transferred to the unintended victim.

"Further, although not in this case, a defendant may be convicted of a crime against an unintended victim with the use of 'concurrent intent' and without the use of 'transferred intent.' Such a defendant also may be convicted of criminal battery, and as Judge Moylan suggested in *Harvey v. State,* 111 Md.App. 401, 430, 681 A.2d 628, 643 (1996), 'the crime of reckless endangerment is also available to pick up much of the slack and to make resort to the transferred intent doctrine less compelling.' There is little, if any, utility in extending the doctrine of 'transferred intent' to inchoate crimes such as attempted murder."

382 Md. at 508, 855 A.2d at 1238.

The State argues that numerous states courts have applied transferred intent where the third party has been injured, but not killed. *See State v. Rodriguez–Gonzales,* 164 Ariz. 1, 790 P.2d 287, 288 (Ct.App.1990); *People v. Ephraim,* 323 Ill. App.3d 1097, 257 Ill.Dec. 291, 753 N.E.2d 486, 496–497 (2001); *Blanche v. State,* 690 N.E.2d 709, 712 (Ind.1998); *Ochoa v. State,* 115 Nev. 194, 981 P.2d 1201, 1204–1205 (1999); *State v. Gillette,* 102 N.M. 695, 699 P.2d 626, 635–636 (Ct.App.1985); *State v. Andrews,* 154 N.C.App. 553, 572 S.E.2d 798, 802–803 (2002); *Short v. State,* 980 P.2d 1081, 1098 (Okla.Crim.App.

1999); *State v. Fennell,* 340 S.C. 266, 531 S.E.2d 512, 517 (2000). We find these cases to be unpersuasive. Moreover, our own case law is clear and well established and, thus, controlling.

The State also argues that *Ford's* discussion of the application of transferred intent to inchoate offenses is mere dictum. While this may be true, this Court transformed that dictum into precedent when it decided *Poe.* As the Court of Special Appeals stated in *Harvey v. State,* 111 Md.App. 401, 426–427, 681 A.2d 628, 641–642 (1996), which, like *Poe,* crystallized the dicta expressed in *Ford:*

"In *Poe v. State,* 341 Md. 523, 529, 671 A.2d 501 (1996), the Court of Appeals summarized its earlier statement in *Ford:*

'We stated in *Ford* that transferred intent does not apply to attempted murder. *Id.* (disapproving application of the doctrine of transferred intent to attempted murder in *State v. Wilson,* 313 Md. 600, 546 A.2d 1041 (1988))....
[T]he doctrine of transferred intent does not apply to attempted murder when there is no death.'

"*Poe* made clear, 341 Md. at 530, 671 A.2d 501, that when the unintended victim is *not* killed, the transferred intent doctrine will not apply:

'In *Ford,* we made clear that if a defendant intends to kill a specific victim and instead wounds an unintended victim *without killing either,* the defendant can be convicted only of the attempted murder of the *intended* victim and transferred intent does not apply. This is not true where, as in the case *sub judice,* the defendant intends to murder one victim and instead kills an unintended victim. (Emphasis in original; footnote and citation omitted).'

"We are not bound, of course, by a three-judge dissent nor by the *dicta* of even a four-judge majority. We are persuaded, however, that the majority's bottom-line conclusion is the sounder position. It is, after all, only with respect to *consummated homicide* that the law necessarily must concern itself with a notion like transferred intent. There is a

necessity principle at work that is not present when no death has resulted."

The State finally argues that basic notions of justice require that a person who, without justification or excuse, undertakes to kill another human being must pay the full price for his act, even though by happenstance, or bad aim, he shoots the wrong person. We are not convinced. As our cases make clear, even demonstrate, there are other theories of liability, such as concurrent intent and depraved-heart recklessness, that are available to insure that the appropriate sanction is imposed in each case.

Based on the foregoing, we are satisfied that there are no good reasons for altering the treatment this Court has given the doctrine of transferred intent. We have arrived at the place where we are over time and after full, exhaustive, and sometimes heated, debate. We are satisfied, moreover, that the position we have adopted is sound.

■ Brady intended to, but did not, kill James. The record reflects that his shots and pursuit were committed in furtherance of this desire. White was an unintended victim, who was wounded during the attempt on James. As articulated in *Poe*, if a defendant intends to kill a specific victim and instead wounds an unintended victim without killing either, the defendant can be convicted only of the attempted murder of the intended victim and transferred intent does not apply. 341 Md. at 529–530, 671 A.2d at 504. We accordingly affirm the judgment of the Court of Special Appeals.

JUDGMENT AFFIRMED, WITH COSTS.