# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Robert Xavier Geter, Appellant.

Appellate Case No. 2018-001647

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 5851
Heard June 7, 2021 – Filed August 18, 2021

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, Assistant
Attorney General Tommy Evans, Jr., and Solicitor Byron
E. Gipson, all of Columbia, for Respondent.

---

**KONDUROS, J.:**  In this criminal case, Robert Xavier Geter appeals his
convictions for the murder of James Lewis (Decedent) and the attempted murder of
Clarence Stone.  The events in the case stem from a bar fight between Geter and
Decedent.  Geter maintains the circuit court erred in charging the jury on

transferred intent in relation to the attempted murder charge and in allowing certain testimony from Investigator Joseph Clarke. We affirm in part, reverse in part, and remand.

**FACTS/PROCEDURAL BACKGROUND**

On the night of March 7, 2015, Stone was at a pool room/restaurant, Culler's Pool Hall, located on Monticello Road in Richland County. Stone acted as something of a bouncer for the business, watching out for arguments or other types of trouble or disturbances. According to Stone, he was playing a game of pool when he heard a commotion and went to investigate. He found Decedent and Geter on the floor fighting. Stone broke up the fight and took Decedent outside on a deck behind the building. Decedent wanted to go back inside to get his chain, and Stone indicated he would retrieve it for him. As Stone was preparing to go back inside, Geter came out onto the deck, approaching Decedent and asking "we good?" Then, Geter swung at Decedent and Stone was caught in between the two while attempting to break up the altercation. Geter had a knife and stabbed and killed Decedent. Geter also struck Stone, stabbing him in the eye, causing permanent blindness in that eye.

Geter was indicted on one count of murder and one count of attempted murder. At trial, in opening statements, Geter's attorney indicated Geter had acted in self-defense after several men, including Decedent and Stone, had attacked and beaten him.

Investigator Joseph Clarke, of the Richland County Sheriff's Office, testified after Stone in the State's case and indicated he was the on-call homicide investigator on the night of the stabbing. He testified as follows regarding his investigation of the incident.

> [STATE]: And you were here in opening statements, correct?
>
> [CLARKE]: Yes.
>
> [STATE]: Is that the first time you heard that story?
>
> [CLARKE]: No. Oh, that story?
>
> [STATE]: Yes, the story that he gave about – in opening statements?

[GETER]:   Your Honor.  I object.  Openings are not evidence, so.

THE COURT:  Overruled.

[STATE]:   His scenario of the facts that Mr. Geter's attorney is now saying happened, is that the first time you have ever heard that?

[CLARKE]:  Yes.

. . .

[STATE]:   You confirmed that Clarence Stone was also a victim?

[CLARKE]:  I did.

[STATE]:   And you spoke with him as well?

[CLARKE]:  I did.  I took a statement at his home.

[STATE]:   And he gave a statement of what occurred?

[CLARKE]:  He did.

[STATE]:   You saw him testify again today?

[CLARKE]:  I did.

[STATE]:   And was that exactly what he told you?

[GETER]:  Objection.  Your Honor.  Improper vouching.

THE COURT:  Overruled.  You are asking about the testimony that he gave?

[STATE]:   Yes.  We watched him just a few minutes ago.

THE COURT:  Overruled.

[STATE]:   The same thing he told this jury happened to him is what he told you?

[CLARKE]: Seems absolutely consistent.  Correct.

At the close of the State's case, Geter moved for a directed verdict arguing the State had offered no evidence Geter specifically intended to kill Stone as required by the attempted murder statute.  The State contended the necessary intent to establish the attempted murder charge could be transferred based on Geter's intent to kill Decedent.  The circuit court agreed and denied the directed verdict motion.

Geter testified in his own defense and indicated he had accidentally stepped on Decedent's foot and when confronted by Decedent, he apologized.  While doing so, Stone came over and interfered in their conversation by hitting Geter in the back of the head.  Then, according to Geter, Stone and Decedent were beating him pretty severely and he believed several other men were also attacking him.  To defend himself, he pulled out his knife and while brandishing it, Decedent and Stone were injured.

At the close of all testimony, Geter renewed his motion for directed verdict which the circuit court denied.  Geter objected to the circuit court charging on the doctrine of transferred intent.  The circuit court denied the objection and charged the jury as follows:

> Ladies and gentlemen, we'll next talk about the doctrine of transferred intent.  If the [d]efendant with malice aforethought attempts to kill another person, but by mistake injures or kills a different person, the law considers that the [d]efendant still had the intent to kill.  Intent to kill is a mental state.  It exists in the mind.  So, if the State proves that a [d]efendant acting with malice had the intent to kill one person, but mistakenly injured another, the intent to kill is merely transferred from the original person the [d]efendant attempted to kill to the actual person injured.
>
> Pursuant to the transfer[red] intent doctrine, if one person intends to harm a second person but instead unintentionally harms a third, the first person's criminal intent toward the second applies to the third as well.

The circuit court also charged the jury on self-defense.  Geter was convicted of murder and attempted murder and sentenced to forty years' imprisonment and twenty years' imprisonment, respectively, to run concurrently.    This appeal followed.

**STANDARD OF REVIEW**

"An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion."  *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."  *State v. Jennings*, 394 S.C. 473, 477-78, 716 S.E.2d 91, 93 (2011) (*quoting Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)).  Likewise, the admission or exclusion of evidence is subject to the discretion of the circuit court.  *State v. Kromah*, 401 S.C. 340, 349, 737 S.E.2d 490, 494-95 (2013).  Additionally, any abuse of discretion related thereto is subject to a harmless error analysis.  *Id*. at 362, 737 S.E.2d at 501.

**LAW/ANALYSIS**

### I.      Transferred Intent and Attempted Murder

Geter argues the circuit court erred in charging the jury on the doctrine of transferred intent to support the attempted murder charge.  We agree.

The South Carolina Court of Appeals has twice-answered the first question presented in this appeal—whether the doctrine of transferred intent applies to attempted murder which requires specific intent.[1]  In *State v. Williams*, 422 S.C. 525, 539, 812 S.E.2d 917, 924 (Ct. App. 2018), *aff'd in part as modified, vacated in part*, 427 S.C. 148, 829 S.E.2d 702 (2019), the court concluded "the doctrine of transferred intent is proper to convict a defendant of attempted murder regardless of whether a victim, intended or unintended, suffers an injury."  In that case, Williams had fired shots into a trailer in which his intended target and two other people were located.  *Id*.  This court found:

---

[1] "A person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied, commits the offense of attempted murder."  S.C. Code Ann. § 16-3-29 (2015).

> Williams misconstrues the attempted murder statute to
> the extent he argues the statute requires the specific intent
> to murder specific victims. Williams specifically argues
> the transferred intent charge erroneously allowed the jury
> to find Williams guilty of attempted murder of Ycedra
> and Wrighton without requiring the State to prove (1)
> Williams knew they were in the [r]esidence and (2)
> Williams specifically intended to kill Ycedra and
> Wrighton [unintended targets], in addition to Young. We
> disagree.

*Id*.

However, the Supreme Court of South Carolina, based on preservation grounds, vacated the portion of *Williams* that decided the transferred intent question. *State v. Williams*, 427 S.C. 148, 150, 829 S.E.2d 702, 703 (2019). Because the defendant had not appealed the erroneous jury charge indicating attempted murder was a *general* intent crime, the court declined to weigh in. *Id*. "Because the court of appeals treated the case as if it had been tried as a specific-intent crime, we vacate the portion of its opinion dealing with the issue of transferred intent and leave for another day the determination of whether the doctrine applies to attempted murder." *Id*. at 157-58, 829 S.E.2d at 707. In spite of declining to address the merits of the issue, the court offered more insight in a footnote to the opinion.

> [W]e find the doctrine of transferred intent unnecessary
> to sustain the convictions for the attempted murders of
> Young and Wrighton. Petitioner was alleged to have
> specifically intended to kill Young the night of the
> shooting, and to have shot at the door where Wrighton
> stood, intending to kill the figure in the doorway. It
> matters not that Petitioner may have been unaware it was
> Wrighton in the door, rather than Young. Simply put,
> Petitioner *intended* to shoot the person (Wrighton) who
> appeared in the doorway. As a result, we alternatively
> sustain Petitioner's convictions for the attempted murders
> of Young and Wrighton without resort to the doctrine of
> transferred intent. Because Petitioner was sentenced to
> three concurrent twenty-year sentences, reversing his

conviction for the attempted murder of [Ycedra[2]] would have no effect on the length of Petitioner's term of imprisonment, and we decline to do so, particularly given that the case was tried as if attempted murder was a general-intent crime.

*Id.* at 158 n.9, 829 S.E.2d at 707 n.9.

In *State v. Smith*, 425 S.C. 20, 32, 819 S.E.2d 187, 193 (Ct. App. 2018), *rev'd and remanded*, 430 S.C. 226, 845 S.E.2d 495 (2020), the court of appeals was again presented with the opportunity to consider the doctrine of transferred intent and attempted murder. The court concluded the doctrine of transferred intent could provide the specific intent to support the charge. *Id.* at 32, 819 S.E.2d at 193. It stated "[t]he foregoing evidence shows Appellant's unjustified, specific intent to kill at least one of the three men he encountered. Further, the State showed specific intent *as to Victim* [not one of the three men] through the doctrine of transferred intent." *Id.* As it had done in *Williams*, the supreme court declined to adopt the court of appeals' position on the issue. The supreme court stated:

> Smith also contends the court of appeals erred in finding the doctrine of transferred intent applied to attempted murder because it is a specific-intent crime. In particular, Smith argues the requisite specific intent necessary to support an attempted murder conviction must be the specific intent to kill *a specific person.* Smith points out the "State elected to prosecute [him] for the attempted murder of [the victim] instead of the attempted murder of [the men in the rival group]," and he "was not tried (nor has ever been tried) for any crime related to [the rival group]." We need not address this issue because the prior issues are dispositive. *Nonetheless, we note the State indicated that—were the [c]ourt to reverse Smith's convictions—it intended to charge Smith with three counts of attempted murder for shooting at the rival group, and one count of assault and battery of a high and aggravated nature (ABHAN) for shooting the victim. ABHAN is a general-intent crime, and, thus, there would*

---

[2] We refer to the third person in the trailer, Ycedra Williams, as Ycedra to avoid confusion with the defendant.

> *be no question on remand as to the applicability of the doctrine of transferred intent.*

*Id*. at 234, 845 S.E.2d at 499 (emphasis added)(citation omitted).

Jurisdictions are split over whether transferred intent can be applied in attempted murder cases. In jurisdictions finding transferred intent applies in attempted murder cases, the rationale is largely based in public policy and reflects the logical extension of the of transferred intent doctrine in murder cases. In other words, if transferred intent applies to convict a killer of an unintended murder, why should a bad actor have lesser consequences simply because the unintended victim did not die? *See e.g. People v. Ephraim*, 753 N.E.2d 486, 496 (Ill. App. Ct. 2001) ("It is well established that in Illinois, the doctrine of transferred intent is applicable to attempted murder cases where an unintended victim is injured."); *State v. Gilman*, 69 Me. 163, 171 (1879) (applying transferred intent to ensure defendants are punished for their actions not the results); *Ochoa v. State*, 981 P.2d 1201, 1205 (Nev. 1999) (finding no reason not to apply transferred intent in case where intended victim died and unintended victim was wounded because although charges differed the intent was the same); *State v. Ross*, 115 So. 3d 616, 621 (La. App. 2013) ("Applying the doctrine of transferred intent to the facts of this case, Mr. Ross's specific intent to shoot Ms. Cloud was transferred when he accidentally also shot Ms. Peters and Mr. Newman" and the extent of their injuries was inconsequential); *State v. Fennell*, 340 S.C. 266, 276, 531 S.E.2d 512, 517 (2000) ("A person who, acting with malice, unleashes a deadly force in an attempt to kill or injure an intended victim should anticipate that the law will require him to answer fully for his deeds when that force kills or injures an unintended victim.").[3]

---

[3] In *Fennell*, 340 S.C. 266 at 277, 531 S.E.2d at 518, the court found transferred intent applied to a charge of assault and battery with intent to kill (ABWIK). ("We hold that the doctrine of transferred intent may be used to convict a defendant of AB[W]IK when the defendant kills the intended victim and also injures an unintended victim."). However, ABWIK was a general intent crime. *See State v. Foust*, 325 S.C. 12, 14-15, 479 S.E.2d 50, 51 (1996) ("As this [c]ourt has recognized that a specific intent is not required to commit murder, the logical inference is that, likewise, a specific intent is not required to commit AB[W]IK."). Therefore, the analysis in *Fennell* cannot be considered determinative of this issue as the court has specified attempted murder is not the codification of ABWIK and does require specific intent. *State v. King*, 422 S.C. 47, 63-64, 810 S.E.2d 18, 26-27 (2017) ("Considering the legislative history as a whole, we conclude that section 16-3-29 is not a codification of the offense of ABWIK. We find the

On the other hand, some jurisdictions require a specific, intended victim to support an attempted murder charge. Those jurisdictions generally maintain that a person cannot be guilty of "attempting" to do an act he did not intend to do [injuring B while attempting to kill A] and public policy did not require extending the doctrine to punish or deter bad actors. *See Cockrell v. State*, 890 So. 2d 174, 181 (Ala. 2004) ("Applying the foregoing rules of construction, we conclude that the statute defining 'attempt' does not clearly evince a legislative intent to apply the doctrine of transferred intent—applicable only to the completed crime of murder—to punish as attempted murder the consequences of an unintended, nonfatal result."); *Ramsey v. State*, 56 P.3d 675, 681 (Alaska Ct. App. 2002) (finding the jury would have to conclude the defendant intended to kill the injured victim to convict her of attempted murder and could not rely upon transferred intent); *People v. Falaniko*, 205 Cal. Rptr. 3d 623, 631 (2016) ("[B]ecause '[t]he crime of attempt sanctions what the person intended to do but did not accomplish, not unintended and unaccomplished potential consequences,' the shooter who fails to kill the unintended victim cannot be convicted of attempted murder under a theory of transferred intent." (quoting *People v. Bland*, 48 P.3d 1107 (Cal. 2002)); *State v. Hinton*, 630 A.2d 593, 602 (Conn. 1993) ("[T]he rule of lenity leads us to conclude that the transferred intent doctrine should not be applied to the crime of attempted murder."); *State v. Brady*, 903 A.2d 870, 882-83 (Md. 2006) (finding "if a defendant intends to kill a specific victim and instead wounds an unintended victim without killing either, the defendant can be convicted only of the attempted murder of the intended victim and transferred intent does not apply");.

After considering South Carolina jurisprudence, as well as that from other jurisdictions, we conclude the circuit court erred in charging transferred intent as to the attempted murder charge.[4] To support that charge, the State must demonstrate

General Assembly expressly repealed the offense of ABWIK and purposefully created the new offense of attempted murder, which includes a 'specific intent to kill' as an element.").

[4] We recognize this court has essentially drawn the same conclusion in the recent case of *State v. James Caleb Williams*, Op. No. 5835 (S.C. Ct. App. filed July 14, 2021) (Shearouse Adv. Sh. No. 24 at 21). However, certain facts in the two cases are distinguishable. Because Williams was acquitted of attempting to murder his "target," the majority in *Williams* concluded no intent existed that could be transferred to the unintended recipient of Williams's bullet. In the case sub judice, Geter was convicted of Decedent's murder. Therefore, because disposition of this case is *wholly* dependent on finding the transferred intent charge *never* applies to

Geter attempted to kill Stone, and that was not the State's theory of the case. So long as attempted murder is a specific intent crime, transferring the intent to kill does not satisfy the necessary mens rea to convict a defendant of the attempted murder of an unintended victim. Furthermore, from a public policy standpoint, the supreme court has strongly suggested in both *Williams* and *Smith* that the lesser offense of ABHAN in cases such as this would serve as an appropriate punishment for the accused.

Based on all of the foregoing, we conclude the circuit court erred in charging transferred intent in this case, and we reverse Geter's conviction for attempted murder.

## II. Testimony of Investigator Clarke

Geter contends the circuit court erred in allowing Investigator Clarke to testify that Geter's opening statement to the jury was the first time he had heard the defense's "scenario of the facts" and that Stone's pretrial statement and testimony were "consistent." We agree in part.

The objection to Investigator Clarke's statement that he first heard Geter's scenario of the facts during opening statements is not preserved for our review. Geter did not object to the question on the ground of bolstering but only noted opening statements are not evidence. Consequently, the point is not preserved. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground. A party may not argue one ground at trial and an alternate ground on appeal.").

The second statement—that Stone's prior statement to Investigator Clarke was consistent with his trial testimony—is troubling. In *State v. Chappel*, 429 S.C. 468, 837 S.E.2d 496 (2000), our supreme court outlined the elements to be examined when determining whether a witness is improperly bolstering another witness's testimony. This court decided the testimony of a witness is improper bolstering if:

---

sustain an attempted murder charge, we conduct a full analysis rather than exclusively relying on *Williams*, even though much of the analysis follows the same rationale.

(1) the witness directly states an opinion about the [other witness]'s credibility; (2) the sole purpose of the testimony is to convey the witness's opinion about the [other witness]'s credibility; or (3) there is no way to interpret the testimony other than to mean the witness believes the [other witness] is telling the truth.

*Id.* at 77, 837 S.E.2d at 501.

"Improper vouching occurs when the prosecution places the government's prestige behind a witness by making explicit personal assurances of a witness's veracity[] or where a prosecutor implicitly vouches for a witness's veracity by indicating information not presented to the jury supports the testimony." *State v. Shuler*, 344 S.C. 604, 630, 545 S.E.2d 805, 818 (2001).

Investigator Clarke did not *directly* comment on the veracity of Stone's testimony. By definition, consistent does not necessarily mean truthful, but it does mean "free from variation or contradiction,"[5] thus creating the impression of accuracy and truthfulness. The question serves no other purpose than to bolster Stone's trial testimony and puts an improper imprimatur on Stone's testimony as truthful. Notably, Stone's prior statement would not have been admissible to prove it was consistent with this trial testimony unless Geter had suggested Stone's trial testimony was a recent fabrication.[6] Therefore, it was inappropriate for

---

[5] *See* Merriam-Webster.com/dictionary/consistent (defining consistent as "marked by harmony, regularity, or steady continuity; free from variation or contradiction").

[6] To admit a prior consistent statement at trial:

(1) the declarant must testify and be subject to cross-examination,
(2) the opposing party must have explicitly or implicitly accused the declarant of recently fabricating the statement or of acting under an improper influence or motive,
(3) the statement must be consistent with the declarant's testimony, and
(4) the statement must have been made prior to the alleged fabrication, or prior to the existence of the alleged improper influence or motive.

Investigator Clarke to opine as to the consistency of Stone's testimony with his prior statement.

Nevertheless, any error in allowing Investigator Clarke's testimony is subject to a harmless error analysis. *See State v. Reyes*, 432 S.C. 394, 405-06, 853 S.E.2d 334, 340 (2020) (conducting a harmless error analysis in an appeal premised on improper vouching); *see also State v. Kelly*, 343 S.C. 350, 369-70, 540 S.E.2d 851, 860-61 (2001) (conducting a harmless error analysis after finding a witness had improperly vouched for another witness and suggested an imprimatur from the State) *rev'd and remanded on other grounds*, 534 U.S. 246, (2002). "Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial. [O]ur jurisprudence requires us not to question whether the State proved its case beyond a reasonable doubt, but whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict." *Reyes*, 432 S.C. at 406, 853 S.E.2d at 340 (citations omitted).

In this case, all of the eyewitnesses' testimony was consistent and the forensic evidence in the case matched a version of events in which Geter was the final aggressor outside on the deck that evening, acting out of revenge rather than self-defense. Additionally, the circuit court instructed the jury that it was charged with determining the credibility of the witnesses in the case. It charged "[n]ecessarily, you must determine the credibility of witnesses who have testified in this case. Credibility simply means believability. It becomes your duty as jurors to analyze and to evaluate the evidence and determine which evidence convinces you of its truth." This instruction did not nullify Investigator Clarke's improper statement but mitigated its impact. *See id*. at 408-09, 853 S.E.2d at 342 (explaining any bolstering of a minor witness's credibility was cured by, among other things, the court's instruction that the jury was the sole arbiter of credibility). Accordingly, we find even though the circuit court erred in allowing Invesitgator Clarke's statement, the error was harmless.

---

*State v. Saltz*, 346 S.C. 114, 121-22, 551 S.E.2d 240, 244 (2001); *see id*. (explaining Rule 801(d)(1)(B), SCRE, changed South Carolina's common law to make a prior consistent statement admissible as substantive evidence).

**CONCLUSION**

Based on the foregoing, we find the circuit court erred in charging the jury on transferred intent. This finding mandates the reversal of Geter's conviction for attempted murder. Additionally, we conclude the circuit court erred in admitting Investigator Clarke's statement regarding the consistency of Stone's testimony with his prior statement. However, this error was harmless under the facts of this case. Nevertheless, we caution the State against eliciting such improper testimony. Because the reversible error in this case pertains only to Geter's conviction for attempted murder, his conviction for Decedent's murder is sustained.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**MCDONALD, J., concurs.**

**GEATHERS, J., concurring in part and dissenting in part:** I agree with the majority that the challenged testimony of Investigator Clarke did not contribute to the verdict and, therefore, its admission was harmless beyond a reasonable doubt. However, I respectfully depart from section I of the majority's analysis concerning the status of our state's jurisprudence as to transferred intent. This court previously addressed this status in *State v. Smith*, 425 S.C. 20, 32–34, 819 S.E.2d 187, 193–94 (Ct. App. 2018), *rev'd on other grounds*, 430 S.C. 226, 845 S.E.2d 495 (2020). While our supreme court reversed our decision to affirm Smith's attempted murder conviction on other grounds, there is nothing to indicate that the court rejected our interpretation of its jurisprudence as to transferred intent. Therefore, I stand by that interpretation. Accordingly, I would affirm not only Geter's murder conviction but also his attempted murder conviction.