J-S42014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDMOND JACKSON, | |
| Appellant | No. 2527 EDA 2014 |

Appeal from the PCRA Order August 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0305882-2005, CP-51-CR-0603441-2005

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 14, 2015**

Edmond Jackson ("Appellant") appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We vacate and remand.

We previously summarized the facts and procedural history underlying Appellant's convictions in our disposition of Appellant's direct appeal:

> On the evening of October 14, 2004, Detective Ronald Dove, Detective James Waring, Officer Thomas Hood, and Officer Edward Allen were investigating a shooting incident that occurred earlier in the day in the neighborhood of 33rd and Cumberland Streets in Philadelphia. Charles Wesley was the target of that shooting. Detectives Dove and Waring were standing on 33rd Street, speaking to Gene Palmer about the incident. Officers Hood and Allen were sitting in a Ford Taurus

---
[*]  Former Justice specially assigned to the Superior Court.

parked nearby on the street. Wesley was walking south on 33rd Street, with Sharee Norton and her two children, Sharron Norton and Shanya Wesley.

A group of men, which included Appellant, Kyle Little, Mufusta McCloud, Ronald Alston, and Leroy Fair was walking toward them. The men were armed. As they neared Wesley, they started shooting. The officers exited their vehicle. Officer Allen pushed Palmer to the ground. Officer Hood radioed for assistance from other officers in the area. Detective Waring, Norton, and her children took cover. Detective Dove saw that the gunmen were firing in his direction, and took particular note of Appellant, who was in a white T-shirt. Detective Dove crouched to the ground. In total, between 50 and 80 shots were fired by the gunmen. Detective Dove fired four shots toward the gunmen. No one was injured. Wesley ran north on 33rd Street. The gunmen ran west on Cumberland toward 34th Street. The detectives and the officers pursued the gunmen. When Detective Dove rounded the corner of 33rd and Cumberland, he saw Appellant. Appellant turned, looked over his right shoulder at Detective Dove, and raised his gun toward the detective. In response, Detective Dove fired one shot at Appellant. Ultimately, Appellant and the other gunmen were apprehended.

On October 14, 2004, Appellant was charged with, *inter alia*, two counts of attempted murder, seven counts of aggravated assault, carrying firearms without a license, and criminal conspiracy. 18 Pa.C.S.A. §§ 2502, 2702, 6106, 901, 903.

Appellant waived his right to a jury trial. Appellant's trial began on November 7, 2005. On November 17, 2005, the trial court found Appellant guilty of all charges. On July 21, 2006, the trial court sentenced . . . Appellant to 13 ½ to 27 years incarceration.

***Commonwealth v. Jackson***, 955 A.2d 441, 442–443 (Pa. Super. 2008)

(footnote omitted). The panel affirmed Appellant's judgment of sentence,

*id.* at 450, and the Pennsylvania Supreme Court denied Appellant's petition

for allowance of appeal. ***Commonwealth v. Jackson***, 967 A.2d 958 (Pa. 2009).

Appellant filed a timely *pro se* PCRA petition on March 9, 2010. The PCRA court appointed counsel who filed an amended petition on April 4, 2013, and an addendum on December 19, 2014. The Commonwealth filed a motion to dismiss and a reply to the addendum on January 21, 2014, and May 14, 2014, respectively. Pursuant to Pa.R.Crim.P. 907, the PCRA court sent a notice of its intent to dismiss Appellant's petition on July 15, 2014. The PCRA court dismissed Appellant's petition without a hearing on August 15, 2014. Appellant filed a timely appeal and, along with the PCRA court, complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following questions for our review:

I.      Was the PCRA court's dismissal of the Appellant's PCRA Petition unsupported by the record and based on legal error because Appellant's sentence is illegal and violates the provisions of the United States Constitution and the Pennsylvania Constitution barring double jeopardy and prior counsel was ineffective for failing to argue these issues?

II.     Was the PCRA court's dismissal of the Appellant's PCRA Petition unsupported by the record and based on legal error because Appellant's convictions violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Due Process Clause of the Pennsylvania Constitution and prior counsel was ineffective for failing to argue this issue?

III.    Was the PCRA court's dismissal of the Appellant's PCRA Petition unsupported by the record and based on legal error because prior counsel was ineffective when he failed

to object to Detective Dove's testimony that the Detective had known Mr. Jackson for two years?

IV. Was the PCRA court's dismissal of the Appellant's PCRA Petition without a hearing an error because newly discovered evidence will demonstrate Appellant's conviction for the attempted murder of Detective Dove should be vacated?

V. In the alternative, should this matter be remanded back to the PCRA Court because after filing of Appellant's appeal, Ronald Dove was charged with a number of crimes stemming from his misconduct as a police officer?

Appellant's Brief at 5.

When reviewing the propriety of an order denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

In order to obtain collateral relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). Instantly, Appellant asserted in his PCRA petition the existence of ineffective assistance of counsel ("IAC") pursuant to 42 Pa.C.S. § 9543(a)(2)(ii). To plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that the underlying issue has arguable merit;

(2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Rykard*, 55 A.3d 1177, 1189–1190 (Pa. Super. 2012). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these prongs. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010); *Commonwealth v. Barnett*, ___ A.3d ___, 2015 PA Super 162 (Pa. Super., filed July 29, 2015). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Commonwealth v. Stultz*, 114 A.3d 865, 881 (Pa. Super. 2015). Moreover, counsel is presumed to have rendered effective assistance. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Appellant first contends that prior counsel was ineffective in failing to argue that Appellant's sentence violates the provisions of the United States and Pennsylvania Constitutions barring double jeopardy. Appellant's Brief at 17. Additionally, Appellant argues that the aggravated assault convictions violate Pennsylvania's merger doctrine. *Id.* at 20.

As the Pennsylvania Supreme Court has explained:

[t]he proscription against twice placing an individual in jeopardy of life or limb is found in the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy protections afforded by our state constitution are

coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense. ***Commonwealth v. Fletcher***, 580 Pa. 403, 861 A.2d 898, 912 (Pa. 2004). We have described double jeopardy rights as "freedom from the harassment of successive trials and the prohibition against double punishment." ***Commonwealth v. Hude***, 492 Pa. 600, 425 A.2d 313, 318 (Pa. 1980) (plurality).

***Commonwealth v. States***, 938 A.2d 1016, 1019 (Pa. 2007). Thus, "[a]n individual may be punished only once for a single act which causes a single injury to the Commonwealth." ***Commonwealth v. Williams***, 753 A.2d 856, 864 (Pa. Super. 2000) (citing ***Commonwealth v. Owens***, 649 A.2d 129 (Pa. Super. 1994)).

However, where more than one person is threatened or injured by a single act of a defendant, the defendant is criminally liable for the harm done to each victim. ***Commonwealth v. Yates***, 562 A.2d 908, 910 (Pa. Super. 1989). We stated in ***Yates***:

> Thus, it remains the law of this Commonwealth that the life and safety of each citizen is to be protected individually. *There is no "two for one discount" in the Pennsylvania Crimes Code, and we will not permit criminals to imply one through distortion of the common-law merger doctrine.* It shall not be a defense to liability that an indiscriminant force employed by a criminal injured or placed at risk more or different persons than intended. To the contrary, the only effective way for a criminal to limit potential liability in that respect is to choose more discriminant tools for achieving the criminal objective(s) sought, *i.e., to stop using firearms and other instruments of crime which place bystanders at risk*.

***Yates***, 562 A.2d at 911 (emphasis in original; footnote omitted). "[T]he merger doctrine is generally 'a rule of statutory construction designed to

determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction.'" ***Commonwealth v. Davidson***, 938 A.2d 198, 217 (Pa. 2007) (quoting ***Commonwealth v. Collins***, 764 A.2d 1056, 1057 (Pa. 2001)). "The purpose of the merger doctrine is double jeopardy-based, *i.e.*, to safeguard against multiple punishments for the same act. . . . The test for sentencing merger is the same test utilized to decide whether more than one offense has been committed in the double jeopardy context." ***Id.*** at 217–218.

Our legislature has addressed the mandatory merger of crimes for the purpose of sentencing in section 9765 of the sentencing code, which provides as follows:

> **§ 9765.  Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.  To determine if two offenses merge for sentencing purposes, the sentencing court must "assess whether the charges arose out of a single set of facts and whether ***all*** the statutory elements of one offense coincide with the statutory elements of the other offense." ***Commonwealth v. Martz***, 926 A.2d 514, 526 (Pa. Super. 2007) (emphasis in original).

Here, the PCRA court disposed of Appellant's double-jeopardy-based merger issue with the following analysis:

> In the petition, counsel went on to cite and discuss in support [of Appellant's argument] the holdings in *Weakland* and *Williams*, which are cited and discussed in *Anderson*.[1] [Appellant's] argument would be perfectly sound if [Appellant] had been convicted of **both** the attempted murder and aggravated assault of the intended victim, and/or **both** the attempted murder and aggravated assault of the bystanders. What [Appellant] failed to mention is that in all of those cases the convictions were for crimes which were perpetrated upon a single victim; there were no bystanders to whom those criminal acts were also directed. In *Anderson*, the defendant shot the single victim, was tried by a jury and convicted of aggravated assault and attempted murder, was sentenced to consecutive terms for each offense, and the Court ruled, of course, that those two convictions should have merged and it vacated the sentence for the assault.
>
> * * *
>
> Counsel's error here is in equating a single physical act, firing a bullet at an intended victim while bystanders are in the line of fire, with a single legally criminal act, attempted murder, and then equating that criminal act with the separate legally criminal acts of assaulting the bystanders. All of the defendants in the transferred intent cases discussed above were convicted and sentenced for more than one assault, those against the intended victims and those against the bystanders, based upon the single physical act of shooting at or assaulting the intended victim with the specific intent to injure him, which intent then transferred to the bystanders because they were in the line of fire. . . . [Appellant] was not charged with or convicted of aggravated assault on the intended victim, nor was he charged with or convicted of the attempted murder of the bystanders. Had he been convicted of both attempting to murder and assaulting either the intended victim and/or the bystanders then counsel's

_____

[1] ***Commonwealth v. Weakland***, 559 A.2d 25 (Pa. 1989), ***Commonwealth v. Williams***, 555 A.2d 1228 (1989), and ***Commonwealth v. Anderson***, 650 A.2d 20 (Pa. 1994), respectively.

argument would have merit, but that is not what happened. He was simply convicted of committing separate crimes by having fired a single shot at one person while others were present and placed in harm's way.

PCRA Court Opinion, 11/19/14, at 24, 26–27 (footnotes omitted).

Upon review, we conclude that the PCRA court's analysis is supported by the record. Appellant fired multiple shots at the intended victim while bystanders were present, thereby exposing multiple people to the risk of serious bodily injury or death. N.T., 11/10/15, at 4–24, 55. Thus, Appellant committed the crime of attempted murder against the intended victim and the crime of aggravated assault against each of the seven bystander-victims.[2] Appellant was convicted of and sentenced on these eight separate crimes. There was no lesser charge to merge into the attempted murder conviction related to the intended victim, and there were no greater charges into which the aggravated assault convictions related to the seven bystanders could merge. Appellant may not escape responsibility for the crimes he committed against the intended victim **and** the seven bystanders.

_____

[2] Attempt is defined by statute as follows: "[A] person commits an attempt when with the intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S. § 901(a). A person may be convicted of attempted murder "if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." **Commonwealth v. Dale**, 836 A.2d 150, 152–153 (Pa. Super. 2003). "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

He is not entitled to a "discount" because his reckless conduct threatened multiple victims. **Yates**, 562 A.2d at 911.

Based on the foregoing, we discern no legal error in the PCRA court's conclusion that Appellant's sentence did not violate the federal or state prohibitions against double jeopardy or Pennsylvania's merger doctrine. Consequently, Appellant's underlying claim lacks merit, and prior counsel cannot be ineffective in failing to present this argument. **Loner**, 836 A.2d at 132.

The Commonwealth points out that Appellant "tacks on a claim that his sentences are illegal under 18 Pa.C.S. § 906 because he was supposedly convicted of 'multiple inchoate crimes for the same act.'" Commonwealth's Brief at 11 (citing Appellant's Brief at 23). Specifically, Appellant argues that, "based on a singular set of facts, [he] was convicted of more than one inchoate crime: attempt to murder and attempt to cause serious bodily injury. These crimes were required to merge at sentencing and they were not merged. For this reason, Appellant's sentence is illegal." Appellant's Brief at 23. The PCRA court implicitly ruled that Appellant waived this issue by failing to preserve and/or plead it. Then, the PCRA court "simply reiterate[d] that [Appellant's] convictions were based on completely separate and distinct criminal acts, albeit based on a single physical one." PCRA Court Opinion, 12/19/14, at 27 (footnote omitted). Unlike the PCRA court, we conclude that Appellant has raised a legality of sentence claim

which we may review. *See Commonwealth v. Berry*, 877 A.2d 479, 487 (Pa. Super. 2005) ("[A] legality of sentence claim retains its non-waivable status so long as the [PCRA's] jurisdictional time limitations are satisfied."). Upon review, we conclude that Appellant's position is untenable.

> Section 906 of the Crimes Code states: "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. "Section 906 was designed to prevent multiple inchoate charges that carry with them the same criminal intent." *Commonwealth v. Davis*, 704 A.2d 650, 653 (Pa.Super.1997). Under section 906, "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Commonwealth v. Graves*, 510 Pa. 423, 508 A.2d 1198 (1986) (emphasis added).

*Commonwealth v. Welch*, 912 A.2d 857, 859 (Pa. Super. 2006).

To the extent Appellant posits that aggravated assault is one of the multiple inchoate crimes, he is incorrect. "Statutes that make an attempt to accomplish something sufficient to complete the crime say so explicitly." *See Commonwealth v. Sims*, 883 A.2d 593, 597 (Pa. 2005), *rev'd on other grounds*, 919 A.2d 931 (Pa. 2007) (citing simple assault, 18 Pa.C.S. § 2701; aggravated assault, 18 Pa.C.S. § 2702; and robbery, 18 Pa.C.S. § 3701(2)). In other words, notwithstanding its "attempt to cause serious bodily injury" component, aggravated assault is not an inchoate offense. Furthermore, we observe that Appellant was charged with—and convicted of—two counts of one inchoate crime, *i.e.*, attempted murder. Although the two attempts arose out of the same criminal incident, they were intended to

culminate in the commission of two different crimes, the death of the intended victim and the death of Detective Ronald Dove ("Dove"). Therefore, Appellant's sentences do not run afoul of section 906, and Appellant's legality of sentence challenge fails.

Next, Appellant contends that prior counsel was ineffective for failing to argue that his convictions violated the due process clauses of the United States and Pennsylvania Constitutions. Appellant's Brief at 26. According to Appellant, the Commonwealth failed to prove beyond a reasonable doubt the *mens rea* element of his aggravated assault convictions. *Id.* at 27. Essentially, Appellant challenges the sufficiency of the evidence as an IAC claim that prior counsel failed to challenge the doctrine of transferred intent as a "constitutional issue of a violation of Due Process." *Id.* at 28.

The Commonwealth counters that Appellant's underlying claim was previously litigated on direct appeal and, therefore, is not reviewable pursuant to 42 Pa.C.S. § 9543(a)(3). Commonwealth's Brief at 13. The Commonwealth further submits that an issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Id.* at 13 (citing 42 Pa.C.S. § 9544(a)(2)).

The PCRA court agreed with the Commonwealth that Appellant's underlying claim was previously litigated:

> Our Supreme Court in *Thompson*, and this Court in [Appellant's] direct appeal, have specifically ruled that the

transfer of the perpetrator's intent to harm the intended victim to the unintended victims provided sufficient proof of the intent element of the crime of assault upon the latter, which, to intentionally belabor the point, is just another way of saying that [Appellant was] not . . . deprived of [his] liberty without full comport with the due process of law. PCRA counsel's theory that applying transferred intent violates the due process clauses is not only not a new theory, it is the specific theory that was raised and rejected in [Appellant's] direct appeal and he cannot be allowed to relitigate that theory under the sham pretext of a claim of ineffective assistance of counsel.

PCRA Court Opinion, 11/19/14, at 23 (internal quoted material and citation omitted).

The PCRA court is correct. Although Appellant currently frames this challenge as an IAC claim, this Court previously addressed the underlying contention as a challenge to "the sufficiency of the evidence to sustain his convictions for the aggravated assaults of Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer." *Jackson*, 955 A.2d at 445. We examined Appellant's challenge in depth, as follows:

While Appellant admits that he intended to shoot Wesley, Appellant contends that these other persons were simply in the way. Appellant argues that the Commonwealth failed to establish that he had the specific intent to cause serious bodily injury to any of these persons, and thus, the requisite intent for his aggravated assault convictions is lacking.

Under the Crimes Code, a person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

- 13 -

\* \* \*

> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4). An attempt under § 2702(a), requires a showing of a substantial step toward causing serious bodily injury to another, accompanied by an intent to inflict serious bodily injury. 18 Pa.C.S.A. § 901(a); **Commonwealth v. Matthew**, 589 Pa. 487, 909 A.2d 1254, 1257 (2006). "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. A "[d]eadly weapon" is "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury[.]" 18 Pa.C.S.A. § 2301.

> "A person acts intentionally with respect to a material aspect of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). "'As intent is a subjective frame of mind, it is of necessity difficult of direct proof.'" **Matthew**, 909 A.2d at 1257 (citations omitted). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." **Id.**

> In **Commonwealth v. Alexander**, 477 Pa. 190, 383 A.2d 887 (1978), the Pennsylvania Supreme Court articulated a totality of the circumstances test for determining whether a defendant, who was charged under the attempt provision of the aggravated assault statute, possessed the intent to inflict serous [sic] bodily injury. The test the Court provided consisted of a non-exhaustive list of factors to be considered on a case-by-case basis. The list included evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and statements or actions that might indicate his intent to inflict injury. **Id.** at 889. Recently, in **Matthew**, the Supreme Court re-affirmed the totality of the circumstances test announced in **Alexander**, and held that the test should be used

to decide whether there is sufficient evidence to convict a defendant charged with aggravated assault for attempting to inflict serious bodily injury upon another. *Matthew*, 909 A.2d at 1259.

In this case, there is no direct evidence of Appellant's intent to cause serious bodily injury to Detective Waring, Officer Hood, Officer Allen, Sharee Norton, her two children, or Gene Palmer. Thus, any evidence of Appellant's intent to do so must be gleaned from the other circumstances surrounding the shots Appellant fired on the evening of October 14, 2004. The evidence shows that these persons were near Wesley, the person Appellant admitted he intended to shoot. The evidence also establishes that these persons were in the line of fire when Appellant started shooting at Wesley.

\* \* \*

As noted, on the issue of Appellant's intent in the present case, the evidence shows that Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer were near Appellant's intended victim. The evidence also shows that Appellant fired a deadly weapon toward them. There is, however, no other evidence, in the form of circumstances, actions or words, occurring before, during, or after the shooting, that tends to demonstrate that Appellant specifically intended to inflict injury upon these particular persons. Therefore, the only circumstance in the record from which it may be inferred that Appellant had the intent to cause these persons serious bodily injury was his firing a deadly weapon in their direction. Based on the totality of the circumstances, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that Appellant harbored the specific intent to cause serious bodily injury with a deadly weapon to any of these persons.

Nonetheless, the Commonwealth contends that Appellant's convictions for aggravated assault must stand. The Commonwealth argues that even if the evidence is insufficient to establish that Appellant had the specific intent to seriously injure these persons, the intent element is satisfied under the doctrine of transferred intent.[4] The Commonwealth argues that under the doctrine, Appellant's admitted intent to shoot and cause Wesley serious bodily harm, satisfies the intent element for

- 15 -

Appellant's aggravated assault convictions of these persons. Appellant counters that the doctrine of transferred intent does not apply in this case because these persons were not actually injured. It is Appellant's position that the doctrine is not meant to apply and has not been applied to a charge of aggravated assault, when criminal liability is premised on the attempt to cause serious bodily injury to another. *See, e.g., State v. Brady*, 393 Md. 502, 903 A.2d 870 (2006), cited in *Commonwealth v. Bullock*, 590 Pa. 480, 913 A.2d 207, 219 n. 11 (2006), (concluding that the transferred intent doctrine does not apply to crimes of attempt because the defendant has committed a complete crime against the intended victim). Appellant further argues that 18 Pa.C.S.A. § 303(b), enacted to reflect existing law, reveals that the doctrine is to be used only where a defendant shoots a gun at a person, intending to cause serious bodily injury, but hits another, or where the defendant shoots the intended victim, but the bullet does not cause serious harm.

[4] The doctrine of transferred intent was codified in 18 Pa.C.S.A. § 303. *Commonwealth v. Devine*, 750 A.2d 899, 904 (Pa.Super.2000), *appeal denied*, 564 Pa. 703, 764 A.2d 1065 (2000). The statute provides in relevant part:

**§ 303. Causal relationship between conduct and result**

**(b) Divergence between result designed or contemplated and actual result.—**When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not

- 16 -

too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b).

* * *

In **Commonwealth v. Thompson**, 559 Pa. 229, 739 A.2d 1023 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000), our Supreme Court considered the doctrine of transferred intent. Based upon the Court's pronouncement in **Thompson** regarding the doctrine, we are compelled to agree with the Commonwealth that the doctrine applies in Appellant's case. In **Thompson**, the evidence established that Francisco Forbes drove to Donovan "George" Aitken's apartment. Forbes was involved in Aitken's marijuana business. When Forbes exited his vehicle, the defendant approached him and asked for a cigarette. Forbes indicated that he did not smoke, crossed the street, and entered Aitken's apartment building. Later, Forbes, Aitken, and Aitken's girlfriend exited the building. As Forbes was crossing the street towards his car, he saw the defendant pull out a handgun and begin firing. Forbes ducked, ran toward the apartment building, and escaped injury. Aitken was shot and fell to the ground. The defendant shot Aitken several more times. Aitken died from the gunshot wounds.

The defendant was charged and convicted of, *inter alia*, first-degree murder as to Aitken and aggravated assault as to Forbes. The Commonwealth's theory on the element of intent for the aggravated assault charge incorporated the doctrine of transferred intent. The trial court found that the doctrine applied and charged the jury accordingly.

On appeal to the Supreme Court, the defendant challenged the sufficiency of the evidence on his conviction for aggravated assault as to Forbes. The defendant also asserted that the trial court erred in instructing the jury on the doctrine. The defendant argued that the instruction was not warranted because Forbes was not an intended victim and because Forbes suffered no harm.

The Supreme Court rejected the defendant's argument, ruling that the doctrine of transferred intent applied in his case.

In doing so, the Court made clear that the defendant's intent for the aggravated assault charge as to Forbes could be satisfied by application of the doctrine, even though Aitken, and not Forbes, was the intended victim, and despite the fact that Forbes was not injured. The Court stated:

> [I]n order to sustain the conviction for aggravated assault, the Commonwealth only needed to establish that appellant attempted to cause serious bodily injury. There is no requirement that the victim actually be injured. Moreover, appellant's argument that the transferred intent instruction was not warranted because he did not intend to shoot Forbes ignores the essence of the transferred intent doctrine, that is, the person who ultimately is the victim not be the original intended victim. "The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." The evidence here demonstrated that appellant shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction. Where the evidence is sufficient to support an instruction, a new trial is not warranted. Hence, this claim warrants no relief.

*Id.* at 1029 (citations and footnote omitted) (emphasis in original).

We conclude that *Thompson* controls and teaches that the doctrine of transferred intent applies in Appellant's case. It is an established fact that Appellant specifically intended to cause serious bodily injury to Wesley with a deadly weapon. Under the doctrine, Appellant's intent in this regard is transferred to Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer. Therefore, the intent element for Appellant's aggravated assault convictions as to these persons was met. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all the reasonable inferences to be drawn, we conclude that the evidence was sufficient to sustain Appellant's convictions for aggravated assault.

*Jackson*, 955 A.2d at 445–446, 448-450 (some footnotes omitted).

This Court already determined that Appellant's aggravated assault convictions were supported by sufficient evidence of intent through application of the doctrine of transferred intent. Therefore, we conclude that application of the transferred-intent doctrine did not result in a violation of Appellant's due process rights. We further conclude that counsel was not ineffective for failing to argue that the convictions violated the federal and state due-process clauses.

Through his third question, Appellant asserts that trial counsel was ineffective for failing to object to the testimony of Dove that Dove had known Appellant for two years. Appellant's Brief at 34. Appellant contends that this testimony was prejudicial because it raised an inference that Appellant had committed other crimes, and it stripped him "of the presumption of innocence." *Id.* at 35.

The challenged testimony arose during Dove's direct examination:

Q: Had you ever seen – you said you arrested Edmond Jackson?

A: Yes.

Q: Had you ever seen him before?

A: Yes.

Q: How long before October 14, 2004 had you seen Mr. Jackson?

A: I've known of him for maybe two years, I probably seen him a couple times in between that.

N.T., 11/15/05, at 97–98.

- 19 -

The PCRA court rejected Appellant's argument with the following analysis:

> *PCRA* counsel described the testimony as follows: "The Detective explained that he was able to identify [Appellant] because he had known him for 'maybe two years.' [(](N.T.) 11/15/05 at 97–98) and had seen [Appellant] a couple of times during that period."; counsel then went on to acknowledge that "Although the Detective did not explicitly state that he knew [Appellant] from prior criminal contacts, but then leapt to the conclusion that that was the obvious implication."
>
> * * *
>
> [O]ur courts have made explicitly clear that, as long as any references that the police make as to their prior personal knowledge of a defendant's identity are devoid of any suggestions of prior criminal acts, those references would not be improper. . . . Even if a judge or jury would have assumed that the officer's prior knowledge of the defendant's identity did mean that he had prior criminal run-ins with the law, it would not have amounted to undue prejudice in view of all of the other relevant incriminating evidence.
>
> * * *
>
> In the amended petition, counsel went on to note that when the prosecutor began to ask the officer about knowing the other defendants, their attorneys objected but were overruled, but then concluded with the bald assumptions that [Appellant's] trial counsel had no reasonable strategic basis for not objecting or requesting a mistrial, that had he objected and cited *Clark* and *Trowery*,[3] he would have been sustained, and that "Significant prejudice resulted because [i]f the Court had not known about [Appellant's] prior contacts with the law, there is a reasonable likelihood the outcome of the trial would have been different. Of course, prior counsel's "reasonable strategic basis

---

[3] ***Commonwealth v. Clark***, 309 A.2d 589 (Pa. 1973), and ***Commonwealth v. Trowery***, 235 A.2d 171 (Pa. Super. 1967), respectively.

for not objecting or requesting a mistrial" was obviously the ethical duty of every attorney not to burden the court with completely frivolous objections or motions. Equally, of course, the next three conclusions are solely based on the unsupported assumptions that the officer's comment did, in fact, imply "prior contacts with the law" and was, therefore, prejudicial and, was, therefore, objectionable, all of which assumptions every court quoted above clearly stated are erroneous if the comment does not contain any indication of prior criminal activity on the part of the defendant. Other than that, the defendant made no attempts to demonstrate how those simple innocuous remarks had any effect on his convictions or that the outcome of the trial would have been different had his attorney objected and been sustained.

Shorn of all those assumptions, [Appellant's] argument is reduced to simply saying that his prior counsel erred and [Appellant] was thereby prejudiced, which is clearly both a failure to properly plead a case for *PCRA* relief, to plead and prove by a preponderance of the evidence that the underlying claim has arguable merit, counsel had not reasonable basis for his inaction and [Appellant] suffered prejudice as a result to the extent that the truth-determining process was so undermined that no reliable adjudication of guilty could have taken place, and, more particularly, a failure to preserve the issue for appeal, since he does not specify any of those alleged, or any other, deficiencies in counsels' conduct in the *1925(b) Statement*. In any event, since [Appellant] agrees that the officer only said he know him, period, this court need only point out that there would have been no basis for any objection and, therefore, his trial counsel cannot be faulted for not raising a frivolous one. And, finally, even if the trial judge did reach an inference of prior criminal activity, it would properly have been considered harmless in view of all of the other evidence.

PCRA Court Opinion, 11/19/14, at 7–12 (footnote and internal citations omitted).

Pennsylvania courts have addressed the issue Appellant now presents in myriad cases. **Commonwealth v. Sanders**, 442 A.2d 817, 818 (Pa. Super. 1982); **Commonwealth v. Potts**, 460 A.2d 1127 (Pa. Super. 1983);

*Commonwealth v. Smith*, 552 A.2d 1053 (Pa. Super. 1988);

*Commonwealth v. Robinson*, 864 A.2d 460 (Pa. 2004). Specifically, in

*Smith*, we reviewed a PCRA petitioner's claim that the trial court erred in

allowing various police officers to refer to their prior contacts with the

petitioner and that trial counsel was ineffective for failing to preserve this

claim for review. *Smith*, 552 A.2d at 1060. We acknowledged that

reference to prior criminal activity by the accused, either expressly or by

reasonable implication, is impermissible. *Id.* (citing *Commonwealth v.*

*Percell*, 454 A.2d 542, 544 (Pa. 1982)). We further recognized, however,

that "not everything a policeman says about a person constitutes an

inference of prior criminal activity on the part of that person." *Id.* (quoting

*Sanders*, 442 A.2d at 818). Indeed:

> [m]erely because a police officer knows someone or
> knows where [he] may be found does not suggest that
> the person has been engaged in prior criminal activity. A
> policeman may know someone because they reside in the
> same neighborhood or for any number of reasons. We
> refuse to hold that a policeman's statement to the effect
> that he knew someone, knew his nickname, or was
> familiar with the person's whereabouts raises an
> inference of prior criminal activity.

*Smith*, 552 A.2d at 1060 (quoting *Sanders*, 442 A.2d at 818).

Here, Dove testified, "I've known of [Appellant] for maybe two years, I

probably seen him a couple times in between that." N.T., 11/15/05, at 97–

98. Because the officer testified only that he knew Appellant and had seen

him a couple of times, Appellant's claim that this testimony raised an

impermissible inference of prior criminal activity is meritless. *Smith* and *Sanders*; *see also Commonwealth v. Riggins*, 386 A.2d 520, 524 (Pa. 1978) (police detective's testimony that he knew where defendant lived "cannot be said to have given the jury the impression that appellant must have been involved in prior criminal activity"). Accordingly, we hold that trial counsel was not ineffective for failing to preserve a claim relating to the admissibility of Dove's testimony.

Appellant's fourth issue challenges the dismissal of his petition without a hearing based upon newly discovered evidence. Appellant's Brief at 37. According to Appellant, his conviction for the attempted murder of Dove should be vacated based on news of Dove's official firing from the Philadelphia Police Department on or before December 6, 2013, for withholding evidence in multiple homicide cases. *Id.* at 38.[4] Citing *Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014), Appellant acknowledges that a newspaper article, in and of itself, does not constitute newly discovered evidence. Appellant's Brief at 40. For that reason, Appellant complains that the PCRA court denied his request for permission and funding to conduct discovery regarding Dove's misconduct "and the

---

[4] Based on Dove's testimony that he knew Appellant, that he saw a man in a white shirt raise a gun toward him, and that Appellant was wearing a white shirt when apprehended, Appellant was the only co-defendant charged with and convicted of the attempted murder of Dove. N.T., 11/15/05, at 74–78, 81–82, 97–98.

implications for Appellant's case." *Id.* at 38–39, 40. Also relying on the *Castro* decision, the PCRA court dismissed Appellant's petition without allowing discovery or conducting a hearing because Appellant "did not present any real evidence or the identities of any witnesses who could supply such evidence to support his after discovered evidence claim." PCRA Court Opinion, 11/19/14, at 31.

The *Castro* decision addressed "whether a newspaper article submitted as the sole support for a motion for new trial on the basis of after-discovered evidence warrants the grant of a hearing." *Castro*, 93 A.3d at 819. Castro was convicted of drug offenses based on evidence that Philadelphia Police Officer Cujdik gave pre-recorded money to a confidential informant, who then entered the defendant's home and purchased drugs. Four days after Castro's trial, the Philadelphia Daily News published an article alleging that Officer Cujdik was under investigation for corruption and falsification of evidence in another case involving the same confidential informant. Holding that allegations in the article did not constitute evidence, the Pennsylvania Supreme Court reversed this Court's order remanding for a hearing on Castro's after-discovered evidence claim. *Id.* at 828.

Here, Appellant acknowledges that, at the time of his PCRA petition and addendum, his "only proof of [Dove's] misconduct was media reports." Appellant's Brief at 38. For that reason, Appellant requested leave "to send subpoenas for Dove's internal affairs files, personnel file, disciplinary file,

and his departmental file." ***Id.*** at 40. According to Appellant, "additional discovery was appropriate and necessary" to show that Dove "flouted departmental policies and routinely lied during homicide investigations." ***Id.***

We note that the denial of a request for post-conviction discovery is reviewed for an abuse of discretion. ***Commonwealth v. Collins***, 957 A.2d 237, 272 (Pa. 2008). Discovery in PCRA proceedings cannot be used as an excuse for engaging in a "fishing expedition." ***Commonwealth v. Lark***, 746 A.2d 585, 591 (Pa. 2000).

Appellant's argument is not persuasive for two reasons. First, the ***Castro*** Court expressly rejected newspaper articles, absent more, as sufficient evidence to warrant a new trial or—by extension under the PCRA— an evidentiary hearing. Second, Appellant can only speculate as to what he would have found in Dove's files if he had been permitted discovery. We discern no abuse of the PCRA court's discretion in refusing to allow a fishing expedition based on a newspaper article and Appellant's speculation. ***Lark***, 746 A.2d at 591.

We reach the opposite conclusion with regard to Appellant's fifth issue, which, because of timing, the PCRA court did not address. According to Appellant, while this appeal from the denial of collateral relief was pending, "Ronald Dove was arrested and charged with: obstructing justice, unsworn falsification to authorities, tamp[er]ing with/fabricating evidence, hindering prosecution, flight, and conspiracy." Appellant's Brief at 42 (citing Appellate

Brief Appendix D, "Dove Docket" at 2). We take judicial notice of the criminal docket at CP-51-CR-0001382-2015, *Commonwealth v. Ronald S. Dove*, and the charges listed therein as set forth by Appellant. Moreover, we take judicial notice of the following docket entries: "Case relisted for status of negotiations/possible non-trial disposition on 9/8/15 courtroom 1008. Trial readiness conference scheduled for 2/15/16 courtroom 1008. Jury Trial date scheduled for 2/17/16 courtroom 1008. Defendant is on bail and has signed service." Docket No. CP-51-CR-0001382-2015 at 4.

In light of the change in Dove's status from "under investigation" to "facing charges," Appellant requests that we remand for an evidentiary hearing. Appellant's Brief at 43. To be entitled to relief under the PCRA on this basis:

> the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). As our Supreme Court has summarized:

> > To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

> *Commonwealth v. Pagan*, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008) (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that

each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa.Super.2010) (citation omitted).  Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case.  ***Commonwealth v. Reese***, 444 Pa.Super. 38, 663 A.2d 206 (1995).

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012).

Upon application of the four-prong test to Appellant's after-discovered-evidence claim, we conclude that he is entitled to an evidentiary hearing. First, Appellant could not have obtained evidence regarding Dove's alleged official misconduct prior to the conclusion of his trial because the initial newspaper article was not published until years after Appellant's trial concluded.  Second, as Appellant submits, evidence of Dove's alleged misconduct "was not cumulative because nothing offered at trial demonstrated that Dove habitually manipulated evidence or improperly interfered with homicide investigations."  Appellant's Brief at 41.  Third, although evidence of Dove's misconduct in other homicide cases would serve to impeach Dove's testimony, such evidence—if connected to Appellant's case and believed—could also result in a different verdict because Dove's testimony was the sole basis for Appellant's second attempted-murder conviction and sentence.[5]  ***Accord Commonwealth v. Rivera***, 939 A.2d

---

[5]  ***Compare Foreman***, 55 A.3d at 537 (where appellant did not establish a nexus between his case and detective's alleged misconduct, other evidence
*(Footnote Continued Next Page)*

355, 359 (Pa. Super. 2007) (holding that appellant was entitled to evidentiary hearing where he could not have discovered expert witness' alleged criminal activities before his trial ended; this after-discovered evidence was neither corroborative nor cumulative; the after-discovered evidence called into serious question the type and amount of drug upon which appellant's conviction and sentence were based).

In sum, we conclude that Appellant's first four claims do not establish a basis for PCRA relief. However, in his fifth claim, Appellant presents more than a newspaper article alleging misconduct by Dove. Actual charges implicating the former detective's role in Appellant's case have been filed against Dove. Thus, we conclude that Appellant's final issue warrants an evidentiary hearing to determine if collateral relief in the form of a new trial is warranted based upon after-discovered evidence.

Order vacated. Case remanded for an evidentiary hearing consistent with this Memorandum. Jurisdiction relinquished.

_(Footnote Continued)_ ————————————

of appellant's guilt existed, and detective was eventually found not guilty of all charges, appellant's assertion that detective committed misconduct in his case was pure conjecture and would not compel a different jury verdict); **Commonwealth v. Estepp**, 17 A.3d 939, 943 (Pa. Super. 2011) ("Appellant can only speculate about possible corruption that has not been corroborated."). **But see Foreman**, 55 A.3d at 539 (Wecht, J. dissenting) ("[If] the goal is to find justice, there well may be circumstances where after-discovered evidence that goes only to attack credibility may justify a new trial.") (citing **Commonwealth v. Choice**, 830 A.2d 1005 (Pa. Super. 2003) (Klein, J. dissenting)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/14/2015